# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1214

_____

United States of America,　　　　*
　　　　　　　　　　　　　　　　*
　　　　　　　　Appellee,　　　　*
　　　　　　　　　　　　　　　　*　Appeal from the United States
　　v.　　　　　　　　　　　　　*　District Court for the Southern
　　　　　　　　　　　　　　　　*　District of Iowa.
Sandra Lynn Teague,　　　　　　　*
　　　　　　　　　　　　　　　　*
　　　　　　　　Appellant.　　　　*

_____

Submitted:　June 17, 2011
Filed:　July 28, 2011

_____

Before BYE and MELLOY, Circuit Judges, and SMITH CAMP,[1] District Judge.

_____

BYE, Circuit Judge.

A jury convicted Sandra Lynn Teague of exceeding authorized computer access and obtaining information from a department of the United States, in violation of 18 U.S.C. § 1030(a)(2)(B) and (c)(2)(A). The district court[2] sentenced her to two years'

---

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska, sitting by designation.

[2]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

probation. Teague appeals contending the evidence was insufficient to sustain her conviction and the district court abused its discretion by denying her request for a government-funded expert witness. We affirm.

I

From March 2000 to June 2009, Teague was employed with Vangent Corporation, Inc., a Department of Education (DOE) contractor that assists with student loan inquiries via a call center and engages in debt collection on behalf of the government. To perform her duties, Teague had privileged access to the National Student Loan Data System (NSLDS), which contains student borrowers' private information. After an internal investigation, the DOE identified Teague as one of nine privileged users who had accessed the student loan records of now-President Barack Obama. Teague was indicted on one count of exceeding authorized access to a computer.

Prior to trial, Teague applied for a court-appointed expert pursuant to 18 U.S.C. § 3006A(e). In her application, Teague stated she needed an "expert to review certain discovery materials concerning the allegation of intentionally exceeding her authorized access to her computer." Although the government did not resist the motion, the district court denied it without prejudice citing "an insufficient basis . . . to justify expenditure of funds for an expert witness given the nature of the issues alleged." Teague did not renew the motion.

At trial, the government introduced, among other evidence, a log of computer activity from August 27, 2008, the date of the alleged offense. The log established that on that day Teague's unique user ID accessed the NSLDS at 5:54 a.m., searched for Obama's records at 5:55 a.m., and viewed Obama's private information until 5:57 a.m. The log also showed that twenty-eight minutes later the same user ID had accessed the records of one Marc Martin, Teague's nephew, and both searches were

conducted from the IP address of Teague's workplace computer. During the investigation and at trial, Teague admitted to conducting the Marc Martin search.

In addition, the government called as a witness Agent Nicole Centers Eisenzopf of the Department of Education Office of the Inspector General Technology Crimes Division. Centers testified there was no timeout between the Obama search and the Marc Martin search. According to Centers, the NSLDS has a security feature that automatically logs users off after thirty minutes of inactivity. Since there was no timeout between the searches, Centers continued, anyone approaching Teague's computer in the interim would have seen the open NSLDS screen.

The government also presented evidence that Teague was at work on the day in question. Bolstering its case, the government called as a witness Pat Meyers, Teague's co-worker, who testified Teague sometimes showed up at work before 6:00 a.m. Finally, the government introduced the evidence of Teague's conversation with Christopher Cooper, Special Agent of the Department of Education Office of Inspector General, which took place on June 16, 2009. According to Cooper, Teague equivocated in response to his questions about the Obama search stating "she can't tell me that she didn't do it, but she doesn't remember doing it." Tr. at 44. Vangent Vice President Kevin Boyle, who also questioned Teague about the Obama search, also recalled Teague alternating between denials and forgetfulness. After less than a day of deliberations, the jury found Teague guilty.

II

First, Teague contends the government's evidence was insufficient to support her conviction. We review the sufficiency of the evidence de novo, "viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." United States v. Piwowar, 492 F.3d 953, 955 (8th Cir. 2007) (internal quotation

marks and citations omitted).  If any interpretation of the evidence would allow a reasonable-minded jury to find the defendant guilty beyond a reasonable doubt, we must uphold the verdict.  United States v. McCloud, 590 F.3d 560, 565-66 (8th Cir. 2009).  This standard of review is very strict, "and the jury's verdict is not to be lightly overturned."  United States v. Hayes, 391 F.3d 958, 961 (8th Cir. 2004).

Teague concedes her unique user ID and password were used to access Obama's student loan records, but denies it was she who used them.  Without offering any alibi of her own, Teague pokes holes in the government's case, arguing generally the jury convicted her by process of elimination. After reviewing the evidence introduced at trial, we conclude the government met its burden.

To convict Teague, the government needed to prove she (1) intentionally exceeded her authorized computer access, and (2) obtained information from a department or agency of the United States.  18 U.S.C. § 1030(a)(2)(B).  While the government did not produce direct evidence of Teague's guilt, it presented copious circumstantial evidence of her involvement, which may properly serve as a basis for the conviction.  United States v. Simon, 376 F.3d 806, 808 (8th Cir. 2004).  For example, the government introduced evidence establishing that on August 27, 2008, Teague's user ID accessed Obama's records, as well as the records of Marc Martin, Teague's nephew.  Critically, Teague admitted to conducting the Marc Martin search.  Furthermore, the government introduced testimony that there was no timeout between the Obama search and the Marc Martin search.  Based on this cumulative evidence, the jury could reasonably conclude the Obama search, which was part of one continuous session with the Marc Martin search, was also conducted by Teague.

Although the defendant is not required to produce proof of her innocence, see Taylor v. Kentucky, 436 U.S. 478, 483 (1978), it is noteworthy that Teague's testimony at trial denying having conducted the Obama search was not particularly credible.  First, Teague was impeached with her prior inconsistent statements

regarding her involvement in the Obama search. Both Special Agent Cooper and Vangent Vice President Kevin Boyle recall Teague stopped short of denying conducting the search when questioned prior to trial. Second, during cross-examination, the government asked Teague if she had contacted her co-workers Daniel Kurtz or Pat Meyers about their upcoming testimony at trial, implying Teague was attempting to tamper with witnesses. Teague responded she was simply returning Kurtz's call and asking Meyers out to lunch. On rebuttal, both Meyers and Kurtz testified Teague's phone calls dealt with the substance of their anticipated trial testimony. With all inferences drawn in favor of the government, a reasonable jury could disbelieve Teague's account of events.

Finally, Teague insists someone else accessed Obama's records using her user ID and password, which she kept in an unlocked desk drawer, particularly since Vangent employees had unlimited access to the office. While this may be so, the government is not required to exclude every hypothesis of innocence; it only needs to present evidence "sufficient to convince the jury beyond a reasonable doubt that the defendant is guilty." United States v. McGuire, 45 F.3d 1177, 1186 (8th Cir. 1995). It has done so in this case by introducing testimony of co-workers, including James Elliot whom Teague suspected the most, denying any involvement in the Obama search. The jury chose to credit her co-workers' testimony, which the jury is entitled to do. United States v. Davis, 471 F.3d 938, 948 (8th Cir. 2006). The government has met its burden, and the jury has properly performed its function. We find no error.

As her second point, Teague argues the district court should have granted her request for expert funds to obtain a computer expert pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A(e). We review the district court's decision to deny expert

funds for abuse of discretion,[3] and will not reverse the court's decision absent a showing of prejudice.  United States v. Mentzos, 462 F.3d 830, 839 (8th Cir. 2006).

The Criminal Justice Act permits a "financially unable" defendant to request expert services that are "necessary for adequate representation."  18 U.S.C. § 3006A(e).  The burden is on Teague to demonstrate an expert is necessary to present an adequate defense, and she must show there is "a 'reasonable probability that the requested expert would aid in [her] defense and that denial of funding would result in an unfair trial.'"  Mentzos, 462 F.3d at 839 (quoting United States v. Thurmon, 413 F.3d 752, 755-56 (8th Cir. 2005)).

In her request to the district court, Teague did not articulate reasons why the computer expert was necessary, let alone demonstrate a reasonable probability the expert would aid in her defense and the denial of the expert would produce an unfair trial.  Teague merely stated she needed a computer expert to review certain discovery materials concerning her impending trial.  Based on this sparse presentation, we cannot say the district court abused its discretion by denying the motion.  See United States v. Ross, 210 F.3d 916, 921 (8th Cir. 2000) (upholding district court's denial of funding where the expert was "cumulative and unnecessary" to his defense and the defendant "failed to demonstrate a reasonable probability that Rosenbaum's services would aid his defense and that denial would result in an unfair trial").

---

[3]The government asserted in its brief that, since the motion was denied without prejudice and Teague failed to renew it, the standard of review should be for plain error.  See United States v. Bordeaux, 84 F.3d 1544, 1547 (8th Cir. 1996).  During oral argument, however, the government seemed to concede the applicable standard of review is for abuse of discretion.  See Langel v. United States, 451 F.2d 957, 963 (8th Cir. 1971) (declining to consider contentions abandoned at oral argument).  We need not resolve this dispute here because Teague would lose under either standard.

By contrast, on appeal Teague develops her reasons for requesting funding for an expert. She claims the expert could have opined about the possible inaccuracy of the government's computer logs, and would have explained how Obama's records could be remotely accessed by someone else, still reflecting Teague's IP address. With computer evidence being the crux of the government's case, Teague asserts the denial of the expert funding put her at an unfair disadvantage at trial.

Although the district court should grant funding "when underlying facts reasonably suggest that further exploration may prove beneficial to the accused in the development of a defense to the charge," it need not authorize funds under 18 U.S.C. § 3006A(e) for a mere "fishing expedition." United States v. Schultz, 431 F.2d 907, 911 (8th Cir. 1970). Here, the underlying facts do not support Teague's theory; she only hopes the expert will develop it. Therefore, we conclude Teague failed to demonstrate that the computer expert was necessary to her defense. See United States v. Ladoucer, 573 F.3d 628, 637 (8th Cir. 2009) (finding expert unnecessary where defendant "offered no evidence supporting his entirely speculative theory questioning the authenticity and accuracy of the videotape"); United States v. Janis, 831 F.2d 773, 778 (8th Cir. 1987) (upholding district court's denial of funding where "underlying facts do not suggest the slightest support for [defendant's] theory of the case").

III

For the foregoing reasons, we affirm the judgment of the district court.

_____