# United States Court of Appeals
### For the Eighth Circuit

_____

No. 11-3717

_____

United States of America

*Plaintiff - Appellee*

v.

Tiran Rodez Casteel, also known as Tiran R. Casteel

*Defendant - Appellant*

_____

No. 12-2707

_____

United States of America

*Plaintiff - Appellee*

v.

Tiran Rodez Casteel, also known as Tiran R. Casteel

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Council Bluffs

_____

Submitted: January 16, 2013
Filed: June 21, 2013

_____

Before RILEY, Chief Judge, WOLLMAN and GRUENDER, Circuit Judges.

_____

RILEY, Chief Judge.

Separate juries convicted Tiran Rodez Casteel (Casteel) of (1) carjacking, using or carrying a firearm in relation to a violent crime, obstructing justice, and witness tampering in the first trial; and (2) two counts of being a felon in possession of a firearm in the second. After the first trial, the district court[1] sentenced Casteel to 319 months imprisonment for the first four convictions. At a separate sentencing after the second trial, the district court sentenced Casteel to 63 months for each of the firearms counts, to be served concurrently with each other and Casteel's four other counts of conviction. Casteel appeals, and we affirm.

## I.    BACKGROUND

### A.    Facts

On September 11, 2008, at approximately 11:30 p.m., Darlene Eitzen, a 76-year-old widow, was awake and alone in her Iowa farmhouse when two gunmen, later determined to be Casteel and his son Devan Casteel[2] (collectively, Casteels), forced their way into Eitzen's home and robbed her. Devan held Eitzen in a chair at gunpoint while Casteel searched the house for valuables.

_____

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

[2]We affirmed Devan's convictions in United States v. Casteel, 663 F.3d 1013, 1015, 1022 (8th Cir. 2011).

Eitzen suspected the robbers were responsible for a July 27, 2008 burglary of part of her deceased husband's coin collection because they seemed familiar with her house and the coin collection. Investigators later learned that in the days following the July 2008 burglary the Casteels sold more than $10,000 worth of coins at a coin shop in St. Joseph, Missouri.

The Casteels' armed robbery of Eitzen lasted about an hour. Eitzen spent most of the hour at gunpoint. Before the Casteels left, Devan twice warned Eitzen not to move from her chair because someone would be watching her. After the robbers left, Eitzen did not leave the chair for about forty-five minutes to an hour because she "was scared that they were out there and may even shoot [her]."

Once she felt safe enough to move, Eitzen tried to call for help, but the Casteels had cut the telephone lines. Eitzen later discovered her cell phone in a cup of water. Eitzen looked out the window and learned the Casteels had stolen her car. With no other way to summon help, Eitzen walked in the rain to a neighboring farmhouse where she called the local sheriff to report the robbery. When Deputy Jake Daly arrived at the neighbor's house at approximately 1:30 a.m. on September 12, 2008, he found Eitzen frightened and crying.

The robbery investigation quickly focused on the Casteels. Later in the morning on September 12, Casteel, a convicted felon, purchased two firearms from Special Agent Paul White, who, unrelated to the robbery investigation, was working undercover for the federal Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). Devan placed the firearms in the backseat of the Casteels' green 1996 Pontiac Bonneville.

Shortly thereafter, ATF officers arrested Casteel for being a felon in possession of a firearm and Devan for aiding and abetting the firearm purchase. After the Casteels were in custody, ATF Agent Tully Kessler photographed and searched the

Pontiac Bonneville incident to the arrests. In addition to the two firearms Casteel had just purchased, Agent Kessler discovered coins in a bank bag and coin box. Agent Kessler seized the firearms, but did not retrieve the coins at that time because they were not related to the firearms investigation.

Agent Kessler asked Iowa State Trooper John Hitchcock, who was assisting with the undercover operation, whether any robberies had been reported. Upon learning of the Eitzen robbery, law enforcement officers secured the Bonneville and obtained a search warrant for the car. Further investigation tied the coins to the Eitzen robbery.

A subsequent search of the house the Casteels shared with Casteel's girlfriend, Anna Dawn Hutt, revealed additional robbery evidence, including more coins; a map officers described as a "back way" to Eitzen's house through farm fields; computer evidence of internet searches about the Eitzens and rare coins; and an all-terrain vehicle (ATV) with burglary tools and fresh vegetation on it.

The robbery investigation also revealed Casteel had recruited others to take part in the robbery. Nathan Wilcoxson, Hutt's son, testified Casteel recruited him to rob Eitzen, and Wilcoxson even took part in a "dry run" with the Casteels before the robbery. Wilcoxson went with the Casteels to Eitzen's farm one night, but they aborted the robbery because it was too late to carry out Casteel's plan, which required Eitzen to be awake.

Wilcoxson testified Casteel instructed him "[a]fter the door was kicked in [Wilcoxson] was supposed to run to [Eitzen's] chair and hold her down while the other person went upstairs and got the coins." If Eitzen resisted, Wilcoxson was to do "[a]nything in [his] power" to make her comply, including "[p]istol-whip her, hit her." In attempting to recruit Timothy Blank to travel with Casteel by ATV to a house where they could rob the residents of their gold at gunpoint, Casteel warned

Blank the robbers might have to kill their victims if the robbers used each other's names or the victims otherwise recognized them.

After his arrest, Casteel sought Wilcoxson's help in preventing Eitzen from testifying. While awaiting trial, Casteel made phone calls and wrote letters to Wilcoxson that Wilcoxson understood to mean Casteel wanted Wilcoxson to kill or harm Eitzen to prevent her from testifying against Casteel or, alternatively, arrange for someone else to "take care of business [Casteel's] way" so Eitzen would not "show up on the stand." The government introduced transcripts of the calls and copies of the letters at trial in support of Wilcoxson's testimony. Casteel's cellmate, Anthony Formaro, testified Casteel spoke with him about arranging to have Eitzen "eliminated from existence on this earth."

### B.    Procedural History

On February 19, 2009, a grand jury charged the Casteels in a nine-count third superseding indictment. Counts 1 and 3 charged Casteel with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 2. Count 1 related to Casteel's purchase of a Winchester 12-gauge shotgun at a garage sale; Count 3 related to Casteel's purchase of the two firearms from Special Agent White. Count 2 charged Devan with knowingly transferring a firearm to a felon, in violation of 18 U.S.C. §§ 922(d) and 924(a)(2).

Count 4 charged Casteel and Devan with carjacking, in violation of 18 U.S.C. §§ 2119 and 2. Counts 5 and 7 respectively charged Casteel and Devan with using or carrying a firearm and brandishing that firearm in relation to the violent federal crimes of carjacking and robbery, in violation of 18 U.S.C. § 924(c)(1)(A)(i) and (ii). Count 6 charged the Casteels with affecting commerce by robbery, in violation of 18 U.S.C. §§ 1951 and 2. Count 8 charged Casteel with obstruction or attempted obstruction of justice, in violation of 18 U.S.C. § 1503, and Count 9 charged Casteel

with tampering with a witness by attempting to kill, in violation of 18 U.S.C. § 1512(a)(1)(A).

Before trial, the district court partially granted Casteel's motion to sever the firearms charges, finding the evidence related to Casteel's prior felony conviction would create a "high risk of prejudice" as to the remaining counts. The district court denied Casteel's motions to suppress evidence seized from the Bonneville and to exclude evidence related to the earlier robbery of Eitzen's residence.

On November 20, 2009, the jury convicted Casteel of all four counts submitted against him in the first trial. Casteel filed post-trial motions, which the district court denied.

Before sentencing, Casteel was twice evaluated by Dr. Dan Rogers, a clinical psychologist who had previously found Casteel incompetent to stand trial on fraud charges in 2004. In 2010 and 2011, Dr. Rogers concluded Casteel suffered from paranoid schizophrenia with depression, dementia, and mental retardation. Dr. Rogers opined Casteel was incompetent, and unlikely to have his competence restored.

On January 3, 2011, Casteel moved for a competency hearing pursuant to 18 U.S.C. § 4241(a). On the government's motion, the district court ordered a mental evaluation pursuant to 18 U.S.C. §§ 4241 and 4247. Beginning in April 2011, Dr. Ronald Nieberding, a forensic psychologist with the United States Department of Justice, observed Casteel on a nearly daily basis for six to eight weeks, frequently interacting with him. Dr. Nieberding concluded Casteel suffered from "mild symptoms of an underlying Schizoaffective Disorder," but "appear[ed] to maintain an accurate factual and rational understanding of his current legal case" and "appear[ed] capable of consulting with, and assisting counsel at the" time of evaluation.

-6-

On September 14, 2011, the district court held a competency hearing at which Dr. Rogers, Dr. Nieberding, and Dr. Loren Olson, a psychiatrist, testified. Dr. Rogers and Dr. Nieberding each testified consistently with their reports. Dr. Olson did not opine as to Casteel's competency. Dr. Olson testified Dr. Rogers's and Dr. Nieberding's diagnoses seemed supported by their testing and that the diagnostic difference in this case between schizophrenia and schizoaffective disorder was minimal.

After the hearing, the district court determined Casteel suffered from some form of mental illness, but concluded Casteel was competent to proceed with sentencing. See 18 U.S.C. § 4241(d). In reaching that conclusion, the district court found Dr. Nieberding's determination of competence more credible than Dr. Rogers's contrary determination. The district court also denied Casteel's request to retroactively declare Casteel unfit to stand trial. On November 22, 2011, the district court sentenced Casteel to 319 months imprisonment and 5 years supervised release.

On February 29, 2012, after a two-day trial, a separate jury convicted Casteel of two counts of being a felon in possession of a firearm. The district court denied Casteel's pro se motion for judgment of acquittal. On July 11, 2012, the district court sentenced Casteel to 63 months on each of those counts to run concurrently with each other and with Casteel's 319-month sentence for his other counts of conviction. Casteel appeals his convictions and sentences.[3]

## II.  DISCUSSION

### A.  Competency

Casteel challenges the district court's competency rulings. "The conviction of an incompetent person is a violation of due process." United States v. Rickert, 685

---

[3]We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

F.3d 760, 765 (8th Cir. 2012) (citing <u>Pate v. Robinson</u>, 383 U.S. 375, 378 (1966)). "[A] defendant must be competent at all stages of the prosecution, including sentencing." <u>Id.</u> A defendant is competent to stand trial or face sentencing "if he 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and 'has a rational as well as factual understanding of the proceedings against him.'" <u>Id.</u> (quoting <u>Dusky v. United States</u>, 362 U.S. 402, 402 (1960) (per curiam)).

Section 4241(a) "directs the district court to grant a motion for a competency hearing when 'there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.'" <u>Id.</u> (quoting 18 U.S.C. § 4241(a)). "The Constitution also requires an adequate hearing if there is sufficient doubt about the accused's competence." <u>Id.</u> "In order to make a determination of competency, the district court should consider the behavior, demeanor, and prior psychiatric history of the defendant." <u>United States v. Turner</u>, 644 F.3d 713, 721 (8th Cir. 2011).

We review the district court's "decision not to order a competency evaluation or hold a competency hearing" for an abuse of discretion, <u>id.</u> at 723, and its "finding of competency for clear error," <u>United States v. Kiderlen</u>, 569 F.3d 358, 363 (8th Cir. 2009). <u>See</u> <u>also</u> <u>Indiana v. Edwards</u>, 554 U.S. 164, 177 (2008) (recognizing "the trial judge . . . will often prove best able to make more fine-tuned mental capacity decisions, tailored to the individualized circumstances of a particular defendant").

> Importantly, "not every manifestation of mental illness demonstrates incompetence." <u>Vogt v. United States</u>, 88 F.3d 587, 591 (8th Cir. 1996) (internal marks omitted). That a defendant suffers from a mental deficiency or demonstrates "bizarre, volatile, and irrational behavior" does not necessarily make him incompetent to stand trial. <u>Id.</u> (internal

marks omitted). A defendant's competency is not static and may change over even a short period of time. See Lyons v. Luebbers, 403 F.3d 585, 593 (8th Cir. 2005) (noting that a district court must remain alert to changing circumstances that may indicate that a defendant who was competent at the commencement of trial has become incompetent).

United States v. Ghane, 593 F.3d 775, 779 (8th Cir. 2010).

### 1. Retroactive Determination

After his conviction in the first trial but before sentencing, Casteel requested that the district court make a retroactive determination of Casteel's competency at trial. The district court "decline[d] to make a retroactive determination regarding [Casteel's] competency to have stood trial," questioning the court's authority under 18 U.S.C. § 4241 and Fed. R. Crim. P. 33(b)(2). The district court also determined the circumstances in Casteel's case did not warrant a retroactive competency determination. See Speedy v. Wyrick, 702 F.2d 723, 725 (8th Cir. 1983) (stating "the test for determining whether a trial court should *sua sponte* order a competency hearing" under the rule of Pate); Harkins v. Wyrick, 552 F.2d 1308, 1311 (8th Cir. 1977) (explaining a post-conviction evaluation of a defendant's competency "is the proper remedy for wrongful denial of a pretrial [competency] hearing" when "a meaningful hearing . . . is still possible"). Casteel contends "the court below errored [sic] in failing to address whether Casteel was mentally competent during his trial." We disagree.

Even if we assume the district court had the authority to grant Casteel a retroactive competency determination more than a year after judgment, Casteel fails to persuade us the district court committed reversible error in denying his requested relief. In arguing a retroactive competency determination was necessary, Casteel's counsel states, "Counsel beliefs [sic] that the Government, and perhaps the Court, will rely partially on Casteel's pretrial conduct and trial demeanor to assess his competency," but Casteel fails to point to anything in Casteel's pretrial conduct and

-9-

trial demeanor that would have alerted the district court to any competency issue at the time of trial. At oral argument, Casteel, through counsel, conceded Casteel made no irrational or incomprehensible comments nor had any outbursts before the district court.

Relying exclusively on Dr. Rogers's competency hearing testimony, Casteel maintains "[t]he record shows he was never restored to competence" after 2004. But Casteel acknowledges he is unable to say whether the district court, at the time of trial, was even aware of Casteel's 2004 incompetency determination. Casteel also ignores the other record competency evidence, including "the 2005 competency restoration examination that determined [Casteel's] competency had been restored" and Dr. Nieberding's competence determination, which the district court found "consistent with its own observations of [Casteel]" during and after trial. Mindful of "the district court's institutional advantage over the court of appeals in evaluating the demeanor of the defendant," Rickert, 685 F.3d at 767, we conclude the district court did not abuse its discretion in deciding Casteel's circumstances did not warrant a retroactive competency determination. See Turner, 644 F.3d at 725-26 (concluding the trial court did not abuse its discretion in failing to order a competency hearing despite the defendant's prior diagnosis of paranoid schizophrenia and "bizarre or irrational" behavior at trial).

### 2. Firearms Trial and Sentencing

Casteel also contends the district court clearly erred in finding him competent (1) to stand trial for the firearms charges, and (2) at the time of each sentencing. Casteel's claims again fall short. Although he contends "[t]he expert testimony presented at the September 14th competency hearing clearly showed that [Casteel]'s mental health disorders have not resolved," Casteel acknowledges "whether Tiran Casteel lacks competency is a close call" that "may hinge on the [district court's] own observations."

The district court cited several compelling reasons for crediting Dr. Nieberding's conclusion that Casteel was competent despite his mental illness, rather than Dr. Rogers's contrary opinion. First, the district court questioned Dr. Rogers's determination that Casteel's current level of cognitive functioning was similar to what it was in 2004, despite the 2005 evaluation indicating Casteel's competency had been restored.

Second, the district court expressed concern about "the accuracy of some [of] the facts relied upon by Dr. Rogers" in concluding Casteel did not understand the proceedings against him. In particular, the district court questioned Dr. Rogers's surprise that Casteel, notwithstanding his familiarity with jails and prisons, did not understand that his letters about silencing Eitzen would not remain private. To the contrary, the district court reasonably found Casteel's coded language in his letters, "presumably to avoid detection," supported "the exact opposite conclusion than that reached by Dr. Rogers" and demonstrated Casteel understood the proceedings against him because he sought to eliminate Eitzen as a key witness.

Third, the district court credited Dr. Nieberding's opinion because Dr. Nieberding interacted with Casteel more frequently and for a longer period than Dr. Rogers. Finally, as noted above, the district court determined Dr. Nieberding's determination of competence was more consistent with the court's own observations of Casteel's behavior during and after trial. "[I]t is 'certainly within a district court's province to choose one expert's opinion over a competing qualified expert's opinion.'" United States v. DeCoteau, 630 F.3d 1091, 1096 (8th Cir. 2011) (quoting Ghane, 593 F.3d at 781). The district court did not err in finding Casteel competent to stand trial and to proceed with sentencing.

### B. Sufficiency of the Evidence—Felon in Possession

On August 2, 2008, Dennis Caudill of Coin, Iowa, held a garage sale at which he offered a Winchester 12-gauge shotgun for sale. The Casteels stopped at the sale,

and Casteel picked up the shotgun, "looked it over," and "made sure it worked."  On August 10, 2008, the Casteels returned to Caudill's residence unannounced, and Casteel negotiated the purchase of the shotgun for $300 cash.  After Casteel exchanged the cash for the shotgun, Casteel handed the gun to Devan, who put the gun in the car.  Caudill also signed a receipt Casteel prepared indicating Caudill sold the gun to Devan.

Later that month, Casteel negotiated the sale of the shotgun, along with two other guns, to Ricky Dean Rivers.  Although Devan did not participate in the negotiations, Casteel advised Rivers that Rivers needed to pay Devan because Casteel "wasn't supposed to have guns."

On September 12, 2008, Special Agent White, responding to an online advertisement as part of an undercover operation, arranged to meet Casteel at the America's Best Value Inn to sell Casteel two firearms—a Ruger .40 caliber pistol and a Colt Delta Elite 10 mm pistol.  Casteel exchanged several e-mails and phone calls with officers regarding the firearms.  Casteel, who was using the alias "Don Hutt," arrived at the parking lot in the green Pontiac Bonneville driven by Devan.

Special Agent White showed the firearms to Casteel to inspect.  Casteel first picked up and inspected the Colt, working the slide and removing and replacing the magazine.  Casteel then examined the Ruger.  While inspecting the firearms, Casteel told Special Agent White that the Casteels had an extensive collection and had recently purchased a large number of guns at auction.  After inspecting the guns, Casteel pulled thirty twenty-dollar bills from his pocket to cover the $600 purchase price and gave the money to Special Agent White.  Devan, who remained quiet during the negotiations, took the two firearms and placed them in the back seat of the Bonneville.  Special Agent White's support team then arrested the Casteels.

On February 29, 2012, a jury convicted Casteel of being a felon in possession of a firearm as charged in Counts 1 and 3 of the indictment. To convict Casteel of possessing a firearm in violation of § 922(g), the government had to prove beyond a reasonable doubt (1) Casteel previously was "convicted of a crime punishable by a term of imprisonment exceeding one year"; (2) Casteel "knowingly possessed a firearm[;] and (3) the firearm" Casteel possessed moved "in or affect[ed] interstate commerce." See United States v. Porter, 687 F.3d 918, 921 (8th Cir. 2012). Casteel only challenges the sufficiency of the evidence of firearm possession.

"We review the sufficiency of the evidence de novo, 'viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict.'" United States v. Teague, 646 F.3d 1119, 1121-22 (8th Cir. 2011) (quoting United States v. Piwowar, 492 F.3d 953, 955 (8th Cir. 2007)). We reverse "only if no reasonable jury could have found guilt beyond a reasonable doubt." United States v. Herbst, 666 F.3d 504, 510 (8th Cir. 2012). "'When a sufficiency argument hinges on the interpretation of a statute, we review the district court's statutory interpretation de novo.'" United States v. Reed, 668 F.3d 978, 982 (8th Cir. 2012) (quoting United States v. Gentry, 555 F.3d 659, 664 (8th Cir. 2009)).

On appeal, Casteel maintains his "possession of the firearms alleged in counts 1 and 3 was simply a fleeting pre-purchase handling or inspection that does not arise [sic] to 'possession' for purposes of 18 U.S.C. § 92[2](g)." In Casteel's view, "[t]he evidence shows, even in a light most favorabl[e] to the government, that Tiran Casteel at most momentarily handled and inspected the guns prior to their purchase by his son Devan" and "[t]he ATF and Dennis Caudill never relinquished possession or control: the firearms were merely on display prior to purchase."

"We have held that police observation of defendant's brief possession of a firearm is sufficient to support a conviction," but left "open the question whether the

-13-

duration of possession might ever be relevant to a finding of knowing possession." United States v. Byers, 603 F.3d 503, 507 (8th Cir. 2010); see also United States v. Wright, 682 F.3d 1088, 1090-91 (8th Cir. 2012) (noting we have not adopted a "transitory or innocent possession" defense). Casteel's unduly narrow view of possession is at odds with the great weight of authority of other circuits deciding this issue.[4] We need not decide whether to join those circuits to resolve this appeal.

Casteel did not object to the district court's jury instruction regarding possession or offer a separate instruction on his "fleeting" possession theory. See United States v. Ali, 63 F.3d 710, 717 n.9 (8th Cir. 1995) ("Because defendant failed to seek a proper instruction on his innocent possession theory, we need not, and do not, decide at this time whether an 'innocent reasons' defense is available under

_____

[4]See United States v. Matthews, 520 F.3d 806, 810 (7th Cir. 2008) (deciding picking up firearms for a few seconds to inspect them "for the purpose of arranging a sale" was "precisely what section 922 was meant to prevent"); United States v. Gilbert, 430 F.3d 215, 218 (4th Cir. 2005) (holding § 922(g) "in no way invites investigation into why the defendant possessed a firearm or how long that possession lasted"); United States v. Gaines, 295 F.3d 293, 300 (2d Cir. 2002) (concluding evidence showing the defendant actually holding firearms while inspecting them before purchase was sufficient evidence of possession "however briefly it occurred"); United States v. Lane, 267 F.3d 715, 718 (7th Cir. 2001) ("Because a defendant can shoot a gun so quickly and easily once he holds it in his hands, we conclude that evidence showing that a felon held a gun is by itself a factor indicating that the defendant had the ability to exercise direct control over the firearm.") (internal marks and quotation omitted); United States v. Adkins, 196 F.3d 1112, 1115 (10th Cir. 1999) (discussing the "fleeting possession theory," but finding it did not apply) overruled on other grounds by Chambers v. United States, 555 U.S. 122 (2009); United States v. Parker, 566 F.2d 1304, 1306 (5th Cir. 1978) (explaining the fact "[t]hat possession is momentary is immaterial" under 26 U.S.C. § 5861 because "[t]he statute is written in absolute terms"); but cf. United States v. Mason, 233 F.3d 619, 624 (D.C. Cir. 2000) (recognizing an innocent possession defense to a § 922(g)(1) charge provided "(1) the firearm was attained innocently and held with no illicit purpose and (2) possession of the firearm was transitory").

-14-

§ 922(g).""). And the district court permitted Casteel to argue to the jury that "touching, inspecting and negotiating a price" for the firearms in connection with Casteel's business of buying and selling used goods with Devan was not possession. Cf. United States v. Stover, 822 F.2d 48, 50 (8th Cir. 1987) (deciding the defendant waived any claim of error when the district court provisionally permitted the defendant to argue innocent possession, but the defendant made no such argument).

After hearing Casteel's argument, the jury rejected Casteel's defense. Whatever the contours of any innocent or transitory possession defense to conviction under § 922(g) that may exist, the jury was not required to accept Casteel's theory, especially under the circumstances of this case. The evidence adduced at trial, viewed "'in the light most favorable to the government,'" along with "'all reasonable inferences that support the verdict,'" would permit a reasonable jury to conclude Casteel's possession of all three firearms was neither fleeting nor innocent. Teague, 646 F.3d at 1121-22 (quoting Piwowar, 492 F.3d at 955). The jury heard testimony that Casteel located firearms for purchase, looked them over, picked them up, inspected them, made sure they worked, negotiated a price, and paid for the firearms before passing them to his adult son Devan, presumably to be added to their extensive collection. The jury reasonably found Casteel possessed the firearms as required for conviction under § 922(g).

## C. Suppression of Evidence

After officers arrested the Casteels in the motel parking lot, Agent Kessler photographed and searched the Bonneville incident to the arrests. In addition to the two firearms, Agent Kessler discovered coins in a bank bag and coin box. Agent Kessler seized the firearms, but did not retrieve the coins at that time because they were not related to his firearms investigation. After learning of the Eitzen robbery from Trooper Hitchcock, law enforcement officers secured the Bonneville and obtained a search warrant for the car.

Casteel argues "[t]he initial search of the Bonneville automobile violated [his] Fourth Amendment right to be free from unreasonable search and seizure." See Katz v. United States, 389 U.S. 347, 357 (1967) ("[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.") (footnote omitted). Casteel argues the search was improper under Arizona v. Gant, 556 U.S. 332 (2009), in which the Supreme Court held the following:

> Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest. When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies.

Gant, 556 U.S. at 351. According to Casteel, the district court should have suppressed the evidence of the robbery because the Casteels were handcuffed and secured away from the Bonneville and "[t]here was no reason for the agents officers believe [sic] evidence of the crime of arrest, possession of a firearm as a felon, would be found within the vehicle" once agents seized the firearms.

The district court denied Casteel's motion to suppress, finding Agent Kessler had probable cause to search the bank bag and coin box for paperwork evidencing the crime of being a felon in possession of a firearm. "When reviewing the denial of a motion to suppress, we review the district court's factual findings for clear error and the legal question of whether the Fourth Amendment was violated de novo." United States v. Salamasina, 615 F.3d 925, 929 (8th Cir. 2010). We reverse only if the denial "'is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, based on the entire record, it is clear a mistake was made.'" Id.

-16-

(quoting United States v. Harper, 466 F.3d 634, 643 (8th Cir. 2006)). The district court did not err in finding "no constitutional defect" with respect to the search.

We agree with the government that "[t]he circumstances of this crime provided 'reason to believe' there was additional evidence of the crime to be found in [the Bonneville], even after the firearms Casteel bought from ATF agents had been removed from the car." See Gant, 556 U.S. at 344. Agent Kessler testified he searched the bank bag and coin box for ammunition and paperwork related to the firearms investigation. As the district court observed, that paperwork could have included printouts of Casteel's internet communications with the ATF, a map to the meeting location, or the receipt book Casteel filled out when he purchased the firearms from Special Agent White—all potential evidence of the crime of arrest. The officers' reasonable belief that there was additional evidence of the crime of arrest in the car supported their search of the box and bag containing the coins.

The officers were also permitted to rely on our then-binding pre-Gant precedent holding that when a police officer "'has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile'" even "where the arrestee has exited the vehicle and has been handcuffed and placed in a police officer's patrol car," United States v. Hrasky, 453 F.3d 1099, 1100-01 (8th Cir. 2006) (quoting New York v. Belton, 453 U.S. 454, 459-60 (1981), and applying Belton's longstanding "bright-line" rule). See Davis v. United States, 564 U.S. ___, ___, 131 S. Ct. 2419, 2429 (2011) (upholding the admission of evidence obtained pursuant to a pre-Gant search of an automobile incident to the arrest of its occupants in reliance upon pre-Gant precedent authorizing such a search); United States v. Tschacher, 687 F.3d 923, 933 (8th Cir. 2012). "[S]earches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule." Davis, 564 U.S. at ___, 131 S. Ct. at 2423-24. The district court properly denied Casteel's motion to suppress.

-17-

**D.    Sentencing**

Casteel contends "the district court committed two sentencing errors in failing to group all indictment offenses and in awarding three criminal history points for convictions contained in the same indictment as the offense of conviction."  In addition to denying error, the government asserts any sentencing error was harmless because the district "court imposed the sentences from Casteel's second trial wholly concurrently to those from his first trial," leaving "no impact on the ultimate length of [Casteel's] sentence."

We must disregard "[a]ny error, defect, irregularity, or variance that does not affect [Casteel's] substantial rights."  Fed. R. Crim. P. 52(a).  When pressed at oral argument, Casteel could not articulate any harm he has suffered as a result of the district court's purported sentencing errors that affects his substantial rights.  As such, we see no compelling reason to remand for resentencing.  See United States v. Allmon, 500 F.3d 800, 806-07 (8th Cir. 2007) (finding no prejudice to the defendant's substantial rights and no miscarriage of justice where a sentencing error did not increase the defendant's sentence beyond concurrent sentences properly imposed for other crimes); United States v. Moyer, 182 F.3d 1018, 1023 (8th Cir. 1999) (concluding any sentencing error was harmless because the sentences for the challenged counts ran "concurrent to, and [were] shorter than" the sentences imposed for other counts of conviction).

**E.    Other Claims**

Casteel's remaining challenges to the sufficiency of the evidence of carjacking and the admission of evidence related to the July 27, 2008 burglary are foreclosed by our rejection of identical claims in Devan's direct appeal.  See Casteel, 663 F.3d at 1019-22.  Indeed, in conceding our opinion in Casteel "squarely resolved or rejected" his remaining claims on the "exact same facts," Casteel admitted at oral argument he had no new arguments, information, or facts for the court to consider.

-18-

## III. CONCLUSION

We affirm.

_____