# United States Court of Appeals
### For the Eighth Circuit

_____

No. 14-3465
_____

United States of America

*Plaintiff - Appellee*

v.

Avery Wade Schoenborn

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: June 12, 2015
Filed: July 20, 2015

_____

Before LOKEN, BYE, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

A jury convicted Avery Schoenborn of sexual abuse of an incapacitated person in violation of 18 U.S.C. §§ 1151, 1153(a), and 2242(2)B. The district court[1] varied downward from the guidelines range and sentenced Schoenborn to 84 months'

_____

[1] The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

imprisonment. On appeal, Schoenborn challenges the sufficiency of the evidence supporting his conviction as well as the "vulnerable victim" enhancement used in calculating his guidelines range. Having jurisdiction pursuant to 28 U.S.C. § 1291, we affirm the judgment of the district court.

## I. Background

On the night of May 6, 2013, Schoenborn, age 25, arranged via Facebook to meet with Fanny Joe Howard, age 21. Howard was out drinking with her friend, Nikia Stillday, age 19. Stillday and Howard went to Schoenborn's residence, and all three of them sat in a car outside drinking Schoenborn's half-gallon bottle of vodka. Some time later, Stillday's friend Dylan Stately joined the group. When Stately arrived, Stillday was visibly intoxicated; she was stumbling and needed help walking. The four decided to drive around the neighborhood and at some point in the drive, Stillday had, according to Howard, "los[t] control of her body." Stillday "blacked out" and urinated on herself in the backseat of Howard's car.

Howard decided to take Stillday home to her house to sleep. When they arrived at Howard's house around 1:30 a.m., Stillday was passed out and the other three helped to carry her into the house, lay her on a loveseat in the living room, and cover her with a blanket. Schoenborn testified that when he arrived at Howard's house he was drunk; he vomited and then went to sleep on the couch in the living room. Howard and Stately retired to bedrooms in the back of the house. Some time after having gone to bed, Howard heard what she described as a "shuffling" and a "small thud" coming from the living room, and she got up to investigate.

Howard turned on the light in the living room and saw Schoenborn on top of Stillday "going up and down. He was just on top of [Stillday] grinding on her body." One of Stillday's legs was out of her pants and her shirt and bra were pushed up. She remained unconscious. When Howard yelled "What are you doing?" Schoenborn

-2-

jumped off and exclaimed "She let me do it." Stately then ran into the living room and Schoenborn ran out of the house. Howard's grandmother, who lived in the house as well, called the police.

A sergeant from the Red Lake Police Department arrived at 2:00 a.m., and he testified that Stillday's "shirt was pushed up so her breasts were exposed. The pants legs, there was only one leg inside of a pants. So she had one leg that was completely out of her pants and underwear." The sergeant could not wake Stillday, despite pinching her arm and using sternum rubs—two techniques that are used to cause a reaction in response to pain. An EMT also failed to get Stillday to respond to "any painful or verbal stimuli." Stillday was transported to the Red Lake Hospital and was shortly thereafter transferred to a second hospital in Bemidji.

Stillday remained unconscious until approximately noon on May 7. When she awoke, she consented to a Sexual Assault Nurse Examination (SANE), though no DNA or forensic evidence was presented at trial. Stillday had no recollection of the previous night after the moment she had passed out in Howard's car. She testified that she never gave Schoenborn any indication that she wanted to have sexual relations with him that evening.

Two officers from the Red Lake Police Department questioned Schoenborn at his home following the incident. He told them that he had been home all night, and the officers noticed he became "agitated" and "aggressive." He was placed under arrest. During questioning later that day, Schoenborn admitted to having gone out drinking with Stillday and Howard but denied having gone back to Howard's house. FBI Special Agent Joe Ogden testified that during a third interview on May 15, 2013, Schoenborn said "he might have had sex with Nikiah [sic] Stillday but he couldn't remember." Ogden testified that during this same interview Schoenborn "said that she was on the couch and she looked at him. Said I want you to F me, fuck me, at which point he took his clothes off, she took her clothes off. He got on top of her and

-3-

inserted his penis into her vagina." After giving this statement, Schoenborn again asserted that he could not remember if he had sexual intercourse with Stillday.

At trial, Schoenborn maintained that he did not have sexual intercourse with Stillday. He admitted he was "about to" have intercourse with her but they were interrupted before he was able to. He additionally admitted to telling Agent Ogden that he had inserted his penis into Stillday's vagina.

A jury convicted Schoenborn of one count of "engaging in a sexual act [with a person] who was physically incapable of declining participation in . . . that sexual act" in violation of 18 U.S.C. §§ 1151, 1153(a), and 2242(2)B. Schoenborn's presentence investigation report recommended a Guidelines sentencing range of 121 to 151 months' imprisonment. The range included a two-level "vulnerable victim" enhancement under USSG § 3A1.1(b)(1). Schoenborn objected to this enhancement on the grounds that the victim's vulnerability was already an element of the offense. The court overruled the objection and sentenced Schoenborn to a below-Guidelines sentence of 84 months' imprisonment.

## II. Discussion

1. Sufficiency of the evidence

"We review the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." United States v. Casteel, 717 F.3d 635, 644 (8th Cir. 2013) (quoting United States v. Teague, 646 F.3d 1119, 1121–22 (8th Cir. 2011)). This court will sustain a jury's verdict "if any rational jury could have found the defendant guilty beyond a reasonable doubt." United States v. Kelly, 625 F.3d 516, 518 (8th Cir. 2010) (quotation omitted). The jury was presented with Schoenborn's confession to Agent Ogden that he had

engaged in sexual intercourse with Stillday. Schoenborn admitted to having made this confession but retracted it at trial and maintained that he was merely "about to" have intercourse with her. The jury rejected Schoenborn's later statement in favor of believing his earlier confession. This was a reasonable choice given that Schoenborn's claim that Stillday had been awake and had initiated the sexual contact was contradicted by significant other evidence indicating that Stillday was incapacitated both before and after the encounter.

Further, Howard testified that when she walked into the living room she saw Schoenborn's body "going up and down. He was just on top of her grinding on her body." Schoenborn then jumped off and exclaimed, "She let me do it." In his defense, Schoenborn points to the lack of forensic evidence of sexual intercourse found during the SANE examination. However, the nurse who performed the examination testified that this was unremarkable and intercourse could nevertheless have occurred without the discovery of physical evidence.

A reasonable jury, taking the evidence as a whole, could conclude that Schoenborn was guilty beyond a reasonable doubt.

2. Sentencing enhancement

Under USSG § 3A1.1(b)(1), a two-level enhancement may be applied to a defendant's base offense level "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim." A "vulnerable victim" means a person "who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." Application Note 2 of the enhancement provides:

> Do not apply subsection (b) if the factor that makes the person a vulnerable victim is incorporated in the offense guideline. For example,

if the offense guideline provides an enhancement for the age of the victim, this subsection would not be applied unless the victim was unusually vulnerable for reasons unrelated to age.

Schoenborn objected to the inclusion of the vulnerable victim enhancement in his presentence investigation report's calculation of his Guideline range, arguing that because Stillday's intoxication was already accounted for in the base offense, the additional enhancement resulted in double counting.

"Double counting occurs when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been . . . accounted for by application of another part of the Guidelines." United States v. Joiner, 418 F.3d 863, 870 (8th Cir. 2005) (quoting United States v. Fortney, 357 F.3d 818, 821–22 (8th Cir. 2004)). However, "the question is not whether the statute of conviction specifically incorporates the elements of the disputed enhancement, but whether the applicable guideline specifically incorporates it." Id.

In this case the applicable statute does include, as an element, the incapacity of the victim—here, incapacity due to extreme intoxication. But the Guideline provision used to calculate Schoenborn's base offense level does not. Instead, § 2A3.1 applies to all sexual abuse offenses under 18 U.S.C. §§ 2241 and 2242. This same guideline provision, with a base offense of 30, would also apply, for example, to a person convicted of sexual abuse through placing another in fear. See 18 U.S.C. § 2242(1). Additionally, § 2A3.1 does not incorporate an enhancement for a specific offense characteristic based on the incapacity of the victim. The commentary to § 3A1.1 precludes application of the vulnerable victim enhancement only "if the factor that makes the person a vulnerable victim is incorporated in the offense guideline." As the victim's vulnerability in this case was not accounted for in either the base offense level or a specific offense characteristic, we conclude the enhancement was appropriately applied. See United States v. Betone, 636 F.3d 384

(8th Cir. 2011) (upholding the vulnerable victim enhancement to the base offense level given under 18 U.S.C. §2242(2) when the victim was passed out after a night of drinking).

### III. Conclusion

Accordingly, we affirm the judgment of the district court.

_____