# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-4157

_____

|   |   |   |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District |
| | * | of Minnesota. |
| Clyde Scott Thompson, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: May 16, 2006
Filed: June 20, 2006

_____

Before MURPHY, JOHN R. GIBSON, and BENTON, Circuit Judges.

_____

MURPHY, Circuit Judge.

Clyde Scott Thompson was convicted by a jury of bank robbery, use of a firearm during a crime of violence, and unlawful possession of a firearm, and the district court[1] sentenced him to 444 months. Thompson appeals, based on the district court's failure to strike a bank teller from the jury panel and its failure to protect his rights under the Sixth Amendment and <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986), by permitting the government to strike the only minority juror. We affirm.

_____

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

At approximately 11:30 or 11:45 a.m. on April 1, 2005 a TCF bank located in a Cub Foods grocery store in Minneapolis was robbed. The teller identified the robber as a Caucasian man with gray hair who was wearing thick framed glasses, a blue windbreaker with white stripes, a gray T-shirt, and a beige hat. She testified that the robber had approached her, handed over a bag, and then pulled out a gun with a long barrel which he pointed at her. The teller placed $3,768 in the bag, including bait and dye packs. After the robber thanked the teller for remaining calm, he put the bag in his jacket and walked out of the bank. The teller called the police and described the robber.

FBI agents received a call alerting them to the robbery and informing them that a Volkswagen Golf with a license plate beginning "NBX" had been seen leaving the area of the robbery. The description matched the vehicle that the agents had seen Thompson driving while he was under surveillance for other robberies in which he was a suspect. One agent went to his residence, and the others set up surveillance positions on the route from the Cub store. When Thompson arrived at his residence at 12:10 p.m., the agents stopped his car and told him to put his hands out the window. Thompson was then removed from the car and patted down. He told the agents there was a gun in a bag in the car, and one of the agents testified at trial that Thompson also said "something to the effect that, we were on him very quick, that we must have been watching the bank ... [and that] we had ruined his April Fool's Day."

Search warrants were obtained for Thompson's car and residence. During the search of his car, agents found a windbreaker and a black denim shirt which both appeared to have dye stains, a dark blue baseball cap, a pair of glasses, currency which appeared to have been dye stained and burned ($3,666 in U.S. dollars and $135 Canadian), a .357 Magnum revolver and ammunition, an air pistol with a CO2 cannister, and a police scanner.

During voir dire one of the prospective jurors, Joyce Smith, was asked about her employment as a teller at a Wells Fargo bank in Red Wing, Minnesota. In response to the court's question whether the fact that she was a driveup teller was "going to interfere at all with [her] ability to be a fair and impartial juror", she answered that she could be fair. After a recess, the court inquired again about her ability to be fair. In response to the question whether her occupation was "going to play a role", she responded that she thought she could be fair. Defense counsel also asked Smith whether "given the type of crime" at issue she could be fair, and she assured her that she could. Defense counsel nevertheless moved to strike Smith for cause because she held the "exact same job" as the teller victim of the defendant. The court denied the motion, and defense counsel used a peremptory strike to remove Smith.

The government used the first of its peremptory strikes to remove Paufue Thao, a twenty year old Hmong immigrant. Thao had stated in his written juror questionnaire that he was twenty, that he had finished high school, that he had a girlfriend, that he did not have children and that he was currently unemployed. Defense counsel asserted its right under Batson v. Kentucky, 476 U.S. 79 (1986), to question the government about its reason for striking the only minority member of the jury pool. The government responded that its reason was not based on race but on Thao's age and on the fact that he "has not had many of life's experiences." In response to further comments from defense counsel, including counsel's statement that he believed there were some younger prospective jurors who had not been stricken, the government elaborated that its decision "was also based on a lack of life experiences, no children, not employed, not married, no prior service. [Thao] answered no to almost everything."

The district court denied the Batson challenge, and the trial proceeded. The jury convicted Thompson of single counts of bank robbery, use of a firearm during a crime

-3-

of violence, and unlawful possession of a firearm, in violation of 18 U.S.C. §§ 2113(a), 2113(d), 924(c)(1)(A), 922(g)(1), and 924(e)(1). He was sentenced to 444 months.

On appeal, Thompson argues that the district court denied his right to an impartial jury composed of his peers by its decisions on prospective jurors Smith and Thao. The government responds that the district court did not abuse its discretion by not excusing Smith for cause because there was no showing of implied bias and that there was no clear error in allowing the prosecutor to strike Thao for the race neutral reasons provided.

Thompson argues that the district court denied his right to an impartial jury by denying his request to strike Smith for cause. The Sixth Amendment guarantees the right to trial by an impartial jury. United States v. Gianakos, 415 F.3d 912, 922 (8th Cir. 2005). In order to make a proper challenge for cause, "a party must show actual partiality growing out of the nature and circumstances of [the] particular case," United States v. Tibesar, 894 F.2d 317, 319 (8th Cir. 1990) (internal citation omitted), and we review district court decisions regarding juror qualification for abuse of discretion. See id. In this case Thompson's sole argument for excluding Smith was the fact that she was a teller for a different bank located in a different part of the state. He asserts that the court should have found implied bias because Smith's employment "created too great an emotional involvement with the facts in this case to allow her to be impartial" and relies on United States v. Allsup, 566 F.2d 68, 71 (9th Cir. 1977). The doctrine of implied bias is reserved for extreme and exceptional circumstances, see Gonzales v. Thomas, 99 F.3d 978, 987 (10th Cir. 1996), and the fact that someone holds a position similar to that of a key witness is not a basis for excluding her where there is no indication of bias. See generally United States v. Brown, 644 F.2d 101 (2d Cir. 1981) (upholding the district court's determination that an employee of a different branch of the victim bank need not be excused for cause).

-4-

Thompson also claims that his ability to obtain an impartial jury was circumscribed by his being "forced to use one of his challenges to remove" Smith. This claim fails, however, because a defendant's "exercise of peremptory challenges pursuant to Rule 24(b) is not denied or impaired when the defendant chooses to use a peremptory challenge to remove a juror who should have been excused for cause." United States v. Martinez-Salazar, 528 U.S. 304, 317 (2000); see also United States v. Sithithongtham, 192 F.3d 1119 (8th Cir. 1999).

Thompson argues that the government's strike of prospective juror Thao denied his sixth amendment right to a jury of his peers. A defendant is entitled to an "impartial jury drawn from a fair cross section of the community." Taylor v. Louisiana, 419 U.S. 522, 536 (1975). A violation of this right requires a showing that the allegedly excluded group is distinctive and is underrepresented on juries due to systematic exclusion. See Duren v. Missouri, 439 U.S. 357, 364 (1979). Thompson alleges that the Hmong people are a distinctive group who are often excluded from juries based on their limited English abilities and the fact that they are "disproportionally among the less privileged in society in socioeconomic terms." These allegations were not bolstered by any evidence, however, and they consequently do not demonstrate error by the district court. See generally United States v. Crawford, 413 F.3d 873, 875 (8th Cir. 2005).

Finally, Thompson asserts that his equal protection rights under Batson were violated by the exclusion of Thao from the jury. A trial court addressing a Batson claim must "determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race"; if so, the burden is on the government to provide a race neutral reason and the court "must then determine whether the defendant has carried his burden of proving purposeful discrimination." Rice v. Collins, 126 S. Ct. 969, 973-74 (2006). We review the district court's determination for clear error. United States v. Campbell, 270 F.3d 702,

706 (8th Cir. 2001).  Since the government provided a race neutral explanation for its peremptory challenge, we need not consider whether Thompson made out a sufficient prima facie case by showing that the only minority jury member had been stricken. See Hernandez v. New York, 500 U.S. 352, 359 (1991) (plurality opinion).  The government's explanation that Thao was young, lacked life experience, did not have children, and was not married or employed is facially valid and was sufficient to meet its burden.  See Purkett v. Elem, 514 U.S. 765, 768 (1995) (per curiam) (internal quotation omitted).  Since the government presented specific race neutral reasons for its strike, the district court did not commit clear error by denying Thompson's Batson challenge.

Accordingly, we affirm the judgment of the district court.

_____