# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-4081

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Pedro Arellano-Garcia, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: September 28, 2006
Filed: December 22, 2006

_____

Before RILEY and COLLOTON, Circuit Judges, and KYLE,[1] District Judge.

_____

KYLE, District Judge.

Pedro Arellano-Garcia appeals his conviction for conspiring to distribute over 500 grams of methamphetamine. Arellano-Garcia argues that the district court[2] erred when it (1) denied his motion to dismiss under the Speedy Trial Act and (2) denied his motion for judgment of acquittal. We find no merit to either of these contentions and, accordingly, affirm.

_____

[1] The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota, sitting by designation.

[2] The Honorable Donald E. O'Brien, United States District Judge for the Northern District of Iowa.

# I.    FACTUAL BACKGROUND

In September 2003, Somsock Senlouangrat ("Sock") and Daosadeth Keophounsouk ("Dao") were traveling in a car on Interstate 29 in Iowa. A Monona County Sheriff's Deputy stopped the car for a license-plate violation. The deputy found two pounds of methamphetamine inside; Sock and Dao were arrested. The two admitted their involvement in drug trafficking and agreed to cooperate in identifying the source of their drugs.

Sock and Dao were then placed in the custody of Special Agent Scott Garland of the Drug Enforcement Administration. They informed Agent Garland that a telephone number stored in Sock's cellular telephone belonged to their supplier, an individual named "Pedro." Sock and Dao then made several tape-recorded telephone calls to Pedro. In the last of these telephone calls, Dao informed Pedro to meet him at a hotel in California; the meeting was a set-up in order to arrest Pedro, but DEA agents failed to arrive in time to make the arrest.

On September 24, 2003, Sock, Dao, and Arellano-Garcia were indicted in the Northern District of Iowa. Arellano-Garcia was apprehended shortly thereafter at the United States/Mexico border and was transferred to custody in Iowa. Sock was released on bond pending trial, but absconded and has not been located; Dao and Arellano-Garcia were both detained prior to trial at the Fort Dodge Correctional Facility.

While on pre-trial detention, Dao received several notes from Arellano-Garcia. Dao made two of those notes available to law enforcement, including one containing threats against Dao should he testify against Arellano-Garcia and promises to help him if he would change his testimony. Arellano-Garcia also told two other inmates at Fort

Dodge that he had provided the methamphetamine to Sock and Dao and that he had written the notes to Dao.

## II.    PROCEDURAL BACKGROUND

Arellano-Garcia was arraigned on November 3, 2003. His trial did not commence until June 20, 2005, however, because of delays occasioned by several pre-trial motions. The longest such delay arose out of Arellano-Garcia's May 10, 2004 motion *in limine* seeking to exclude the notes he had written to Dao. The district court granted that motion on June 11, 2004, and the Government filed an interlocutory appeal of that decision on June 17, 2004. On June 18, 2004, the district court stayed proceedings as to Arellano-Garcia, pending this Court's decision on the interlocutory appeal.

On January 24, 2005, this Court issued its judgment reversing the district court's ruling on the motion *in limine*. For reasons not disclosed by the record, however, the mandate did not issue until April 29, 2005. The district court received the mandate on May 2, 2005, and promptly set a June 20, 2005, trial date.

On June 13, 2005, Arellano-Garcia moved to dismiss the indictment, alleging that the Speedy Trial Act had been violated. The district court denied that motion on June 17, 2005. Trial commenced on June 20, 2005; during the trial, Dao identified Arellano-Garcia in open court and testified that Arellano-Garcia supplied the drugs that were in his and Sock's possession when they were arrested. On June 23, 2005, the jury returned a guilty verdict. This appeal followed.

## III. DISCUSSION

### A. Speedy Trial Act

The Speedy Trial Act, 18 U.S.C. § 3161, requires a defendant's trial to commence within 70 days of the latter of (1) the filing of the indictment or (2) the defendant's arraignment. 18 U.S.C. § 3161(c)(1); United States v. McKay, 431 F.3d 1085, 1091 (8th Cir. 2005). If a defendant's rights under the Speedy Trial Act are violated, the indictment must be dismissed. Id. However, the Act excludes certain delays from the 70-day calculation, such as those occasioned by pre-trial motions or interlocutory appeals. 18 U.S.C. § 3161(d), (h).

In ruling on Arellano-Garcia's motion to dismiss, the district court concluded that only 49 includable days had elapsed from Arellano-Garcia's arraignment to his trial. Arellano-Garcia argues that the district court improperly excluded four time periods when calculating how much speedy-trial time had elapsed.[3]

Arellano-Garcia first argues that the district court improperly excluded the period from November 7 to November 25, 2003. On November 6, 2003, the district court entered an Order setting a plea hearing for Dao. In that Order, the district court (properly) excluded from Dao's speedy-trial calculation the time period from November 6, 2003, to the date of the plea hearing. See 18 U.S.C. § 3161(h)(1)

---

[3] We have examined the remaining time periods excluded by the district court and agree with the exclusion of those periods (none of which Arellano-Garcia has challenged). However, the district court improperly *included* one day – November 3, 2003, the day of Arellano-Garcia's arraignment – in its Speedy Trial Act calculation. (App. at 87.) The speedy-trial clock does not commence until the day *after* a defendant's arraignment. See United States v. Yerkes, 345 F.3d 558, 561 (8th Cir. 2003); United States v. Long, 900 F.2d 1270, 1274 (8th Cir. 1990). Accordingly, the district court should have concluded that 48 includable days, not 49 days, had elapsed before the trial began.

-4-

(excluding delays resulting from "proceedings concerning the defendant"). Dao actually pled guilty on November 25, 2003. Accordingly, the period from November 6 to November 25, 2003, was excludable as to Dao. And, because "exclusions of time attributable to one defendant apply to all codefendants," United States v. Patterson, 140 F.3d 767, 772 (8th Cir. 1998); accord United States v. Jones, 801 F.2d 304, 316 (8th Cir. 1986), this period was also excludable as to Arellano-Garcia.

Arellano-Garcia next argues that the period from February 14 to May 2, 2005, should not have been excluded. As discussed above, on January 24, 2005, this Court issued its judgment reversing the district court's ruling on the Government's motion *in limine*. Arellano-Garcia had until February 7, 2005, to petition the Court for rehearing, see Fed. R. App. P. 40(a)(1), but he did not do so. Accordingly, the Court's mandate should have issued on February 14, 2005. See Fed. R. App. P. 41(b). For reasons not disclosed by the record, however, the mandate did not issue until April 29, 2005, and was not received by the district court until May 2, 2005. Arellano-Garcia argues that the period from February 14, 2005 – when the mandate should have issued – to May 2, 2005 – when the mandate was actually received – should not have been excluded by the district court. We disagree.

Section 3161(h)(1)(E) of Title 18, United States Code, excludes from speedy-trial time a delay in commencing a defendant's trial resulting from "any interlocutory appeal." Such a delay necessarily lasts until the district court receives the mandate, because the district court is without jurisdiction to act until the mandate is received. See United States v. Long, 900 F.2d 1270, 1276 (8th Cir. 1990). In other words, because a district court cannot commence the trial until it receives the mandate, the excludable "delay" under the Speedy Trial Act – that is, the delay in commencing the defendant's trial occasioned by an interlocutory appeal – must extend up to the date

in which the mandate is received by the district court. Id. ("The district court is unable to proceed to trial until it has received the appellate court's mandate.").[4]

Relying on Rule 41 of the Federal Rules of Appellate Procedure and United States v. Stafford, 29 F.3d 181 (5th Cir. 1994), Arellano-Garcia argues that the district court could have commenced the trial before receiving this Court's mandate because it enjoyed "dual jurisdiction" with this Court after February 14, 2005, the date the mandate should have issued. Rule 41, however, makes no mention of "dual jurisdiction." Moreover, the exercise of "dual jurisdiction" by a district court would contravene the Supreme Court's admonition that "a federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously." Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982). Indeed, even the Stafford court recognized that "the district court *should* have awaited our mandate" before proceeding. 29 F.3d at 184 (emphasis in original); see also id. at 181 ("we do not endorse the district court's decision to act upon our judgment before the mandate issued"). Accordingly, we conclude that the district court properly excluded the period from February 14 to May 2, 2005, in its speedy-trial calculation.

Arellano-Garcia next argues that the district court improperly excluded the period between May 2 and June 13, 2005. The record is clear, however, that the district court actually included that period in its calculation. (App. at 88.)

Finally, Arellano-Garcia argues that the period from April 14 to May 5, 2004, was improperly excluded by the district court. That delay resulted from a continuance

---

[4] Arellano-Garcia argues that the excludable delay should terminate on the date the mandate issues, rather than the date it is received by the district court, but this argument is foreclosed by Long. See also Committee on the Administration of the Criminal Law of the Judicial Conference of the United States, Guidelines to the Administration of the Speedy Trial Act of 1974, as amended, 106 F.R.D. 271, 288 (1985) (excludable delay caused by interlocutory appeal ends on the "[d]ate the district court receives the mandate or order of the court of appeals").

of the trial date at the Government's behest. The district court granted the continuance, but failed to state that the ends of justice served by doing so outweighed Arellano-Garcia's (and the public's) interest in a speedy trial. 18 U.S.C. § 3161(h)(8)(A). Arellano-Garcia argues that, without such an "ends-of-justice" finding, the district court improperly excluded the period.

Regardless of the merit in Arellano-Garcia's argument, the Court need not address it because the district court properly excluded the other time periods Arellano-Garcia now challenges. Thus, even if this 21-day period were added to the other 48 includable days that had elapsed before trial, Arellano-Garcia still would have been brought to trial within the requisite 70 days. Accordingly, assuming *arguendo* that the district court erred by excluding this period, such error was harmless.

### B. Motion for judgment of acquittal

Arellano-Garcia next argues that there was insufficient evidence to support his conviction and that the district court therefore erred in denying his motion for judgment of acquittal. Specifically, he argues that the Government failed to offer any evidence indicating that he was the same "Pedro" identified in tape-recorded conversations played for the jury. However, he either ignores or overlooks the fact that Dao identified Arellano-Garcia's voice on those tape recordings and identified him in open court as the supplier of the drugs in Dao's and Sock's possession when they were arrested. Finally, two other cooperating witnesses testified that Arellano-Garcia admitted his involvement in a conspiracy to distribute drugs with Sock and Dao. The evidence, therefore, was clearly sufficient to establish that Arellano-Garcia knowingly participated in a conspiracy to distribute methamphetamine. See United States v. Adams, 401 F.3d 886, 893 (8th Cir. 2005); United States v. Aguilar-Portillo, 334 F.3d 744, 747 (8th Cir. 2003). Accordingly, the district court did not err in denying Arellano-Garcia's motion for judgment of acquittal.

## V.    CONCLUSION

For all the foregoing reasons, we affirm the judgment of the district court.

_____