# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-2059

_____

United States of America

*Plaintiff - Appellee*

v.

Christopher Mallett

*Defendant - Appellant*

_____

No. 13-2060

_____

United States of America

*Plaintiff - Appellee*

v.

Guy E. Allen, also known as Pickle

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Lincoln

_____

Submitted: December 18, 2013
Filed: May 15, 2014

_____

Before RILEY, Chief Judge, WOLLMAN and LOKEN, Circuit Judges.

_____

RILEY, Chief Judge.

A jury convicted Guy E. Allen and Christopher Mallett (who were sometimes referred to as "Pickle" and "Beans," respectively) each of conspiring to distribute 280 grams or more of cocaine base (crack cocaine), in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846.  Allen appeals his conviction, arguing the prosecution violated his constitutional and statutory rights to a speedy trial and the evidence was insufficient to support his conviction.  Mallett appeals his conviction, raising severance issues and arguing the district court[1] erred in denying Mallett's motion for judgment of acquittal and overruling Mallett's objection under Batson v. Kentucky, 476 U.S. 79 (1986).  Having appellate jurisdiction under 28 U.S.C. § 1291, we affirm.

I.      BACKGROUND

On August 24, 2011, a grand jury indicted Allen for one count of conspiracy to distribute 280 grams or more of crack cocaine.  Superseding indictments added Terrelle L. Tyler and Mallett as co-defendants to the existing conspiracy charge.

A few weeks after the defendants were arraigned on the second superseding indictment, Tyler changed his plea to guilty.  During Tyler's plea process, Mallett moved to sever his trial from Allen's, which the magistrate judge[2] denied.  Following

_____

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

[2]The Honorable Cheryl R. Zwart, United States Magistrate Judge for the District of Nebraska.

the denial, Allen moved to dismiss the second superseding indictment, citing violations of Allen's rights under the Speedy Trial Act of 1974 (STA), 18 U.S.C. § 3161 et seq., and right to speedy trial under the Sixth Amendment. Adopting the magistrate judge's findings and recommendation, the district court denied the motion on January 17, 2013.

Mallett's and Allen's jury trial began on January 22, 2013. During jury selection, Mallett raised a Batson objection to the government's use of a peremptory challenge to strike a young African-American woman from the venire. The district court accepted the government's explanation as race neutral and overruled Mallett's objection.

At trial, ten witnesses, including police officers who had been operating undercover, testified about instances where Allen or Mallett sold crack cocaine, often by either delivering the drug to a certain address or by selling out of a customer's house or apartment. Several witnesses testified Allen, Mallett, and Tyler often sold crack cocaine together, either in pairs or as a group, and often cooperated in making sales. At the close of the government's evidence and again after the close of the defendants' evidence, both Allen and Mallett moved for a judgment of acquittal pursuant to Fed. R. Crim. P. 29(a). The district court denied both motions. On February 1, 2013, the jury found both defendants guilty of conspiracy to distribute 280 grams or more of crack cocaine. Following sentencing, both Allen and Mallett timely appealed.

## II. DISCUSSION
### A. Allen's Speedy Trial Rights
Allen argues the district court erred in denying his October 25, 2012, motion to dismiss for violations of his speedy trial rights under both the STA and the Sixth Amendment. Our discussion addresses only the facts pertinent to each argument.

## 1.    Speedy Trial Act

"In the context of Speedy Trial Act rulings, we review a district court's legal conclusions de novo, its factual findings for clear error, and its ultimate determination for an abuse of discretion." United States v. Porchay, 651 F.3d 930, 935 (8th Cir. 2011). "Under the Speedy Trial Act, a defendant must be brought to trial within 70 days of his indictment or first appearance, whichever is later." United States v. Suarez-Perez, 484 F.3d 537, 540 (8th Cir. 2007); see 18 U.S.C. § 3161(c)(1). This seventy-day countdown automatically excludes "[a]ny period of delay resulting from other proceedings concerning the defendant," 18 U.S.C. § 3161(h)(1), including any "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion," id. § 3161(h)(1)(D).[3] "'[E]xclusions of time attributable to one defendant apply to all codefendants.'" United States v. Arrellano-Garcia, 471 F.3d 897, 900 (8th Cir. 2006) (quoting United States v. Patterson, 140 F.3d 767, 772 (8th Cir. 1998)).

The magistrate judge found fifty-three non-excluded days had accrued to Allen's STA clock, which was well under the STA's seventy-day limit. See 18 U.S.C. § 3161(c)(1). The district court adopted this calculation and denied Allen's motion. On appeal, Allen leaves this calculation unchallenged except to argue that it improperly excluded two periods from his STA clock: (1) a thirteen-day period running from July 4, 2012, through July 16, 2012, and (2) a seven-day period running

---

[3]"Previously codified at 18 U.S.C. § 3161(h)(1)(F), the pretrial motion exclusion provision is now codified at 18 U.S.C. § 3161(h)(1)(D). As no substantive changes were made to provisions relevant here, [we] cite[] to the current version of the Act," whereas some of the cases we cite discuss the prior version. United States v. Bloate (Bloate II), 655 F.3d 750, 753 n.2 (8th Cir. 2011); see Judicial Administration and Technical Amendments Act of 2008, Pub. L. No. 110–406, § 13, 122 Stat. 4291, 4294.

from July 20, 2012, through July 26, 2012.[4] Because we conclude the seven-day period was properly excluded, thereby fitting Allen's trial within the seventy-day window, we need not address Allen's argument as to the thirteen-day period.

The magistrate judge entered an order on July 20, 2012, scheduling Tyler's change of plea hearing for July 26, 2012. The order explained that Tyler "has requested to set a change of plea hearing." There is no dispute as to whether Tyler in fact made the request, though the record shows nothing was filed with the court on July 20, 2012. On July 26, 2012, the hearing proceeded as scheduled, and the magistrate judge recommended the district court accept Tyler's guilty plea.

In the past, we said a defendant's STA clock excludes the period between the district court's order setting a plea hearing and the date of the hearing because this period fits § 3161(h)(1)'s opening language excluding "proceedings concerning the defendant," 18 U.S.C. § 3161(h)(1). See Arrellano-Garcia, 471 F.3d at 900. However, in Bloate v. United States, 559 U.S. 196 (2010), the Supreme Court limited § 3161(h)(1)'s opening language. The Court held that a period of delay "governed by" one of § 3161(h)(1)'s subparagraphs is only automatically excludable—i.e., excludable without an ends-of-justice continuance under § 3161(h)(7)—to the extent permitted by the specific language and limitations of the governing subparagraph. Id. at 207-10. For example, subparagraph (D) governs all "delay resulting from any pretrial motion," meaning a period of pretrial motion-related delay is automatically excludable *only* "from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion," 18 U.S.C. § 3161(h)(1)(D). See Bloate, 559 U.S. at 204-07. If the delay is governed by subparagraph (D) but fails to meet its requirements, the opening language of (h)(1) cannot operate as a backstop.

---

[4]The magistrate judge excluded July 25 and 26 on additional grounds, which Allen does not challenge here, meaning only the first five days of the seven-day period are truly disputed.

See id. at 209.  Thus, before applying § 3161(h)(1)'s opening language, as we did in Arellano-Garcia, we must examine the possible governing subparagraphs and their limitations on exclusion.  We need look no further than subparagraph (D).

Relying on our precedent in Bloate II, Allen argues Tyler's July 20, 2012, request for a change of plea hearing is not a "motion" within the meaning of subparagraph (D).  We understand Allen to assert that the period between July 20, 2012, and July 26, 2012, was pretrial motion-related delay—i.e., delay governed by subparagraph (D)—whose STA exclusion was prohibited because there was no "filing of [a] motion" to commence subparagraph (D)'s excludable period, 18 U.S.C. § 3161(h)(1)(D).  See Bloate II, 655 F.3d at 755-57 (deciding subparagraph (D) governed the delay attributable to defendant's "motion for leave to waive his right to file pretrial motions," but this period was not excluded because the filing was not a "motion").

Unlike the filing in Bloate II, Tyler's request "appear[ed] to be a motion."  655 F.3d at 755.[5]  In Bloate II we explained the defendant's waiver did not "contain[] a request for relief that require[d] court intervention" and there was no authority suggesting "a defendant needs the permission of the court to waive the right to file pretrial motions . . . , or that a court is required to find whether any waiver is knowing and voluntary."  Id. at 756.  For Tyler to plead guilty, Rule 11 of the Federal Rules of Criminal Procedure required the district court to conduct a hearing in open court to determine whether a factual basis supported the plea and whether Tyler's plea was voluntary and made with full knowledge of the consequences.  See Fed. R. Crim. P.

---

[5]We also noted in Bloate II "the district court treated the waiver as not being a motion," but instead referred to the filing as a "memorandum."  655 F.3d at 755. Though we are not necessarily bound by the district court's characterization here, we recognize the magistrate judge, in scheduling Tyler's hearing, described the request as a "motion."

11(b). Tyler's request triggered this necessary hearing and ultimate acceptance of his plea. See id.

We reiterate that "motion" cannot be defined "so broad[ly] that any *filing* can be deemed a motion," but we also repeat that a "party's submission—whether express or implied, formal or informal—can be considered a 'motion' for Speedy Trial Act purposes if it contains a request for relief that requires court intervention." Bloate II, 655 F.3d at 756-57. Though Tyler's request "to set a change of plea hearing" was informal, it plainly asked the district court to intervene by scheduling and conducting a change of plea hearing. Other circuits describe a defendant's notice of change of plea as a "motion" for purposes of subparagraph (D). See, e.g., United States v. Loughrin, 710 F.3d 1111, 1120 (10th Cir. 2013), cert. granted, 134 S. Ct. 822 (2013)[6]; United States v. Mensah-Yawson, 489 F. App'x 606, 609-10 (3d Cir. 2012) (unpublished); United States v. Jenkins, 92 F.3d 430, 440 (6th Cir. 1996). Accordingly, we interpret Tyler's request as a "motion" within the meaning of subparagraph (D), leading simultaneously to the conclusion that the ensuing delay is pretrial motion-related delay governed by subparagraph (D).

Allen also argues the period following Tyler's request fails to qualify for subparagraph (D)'s exclusion because "[n]othing was 'filed' by Mr. Tyler on July 20, 2012." Subparagraph (D)'s exclusion runs "from the filing of the motion," 18 U.S.C. § 3161(h)(1)(D), but a motion can be "express or implied, *formal or informal*," Bloate II, 655 F.3d at 756 (emphasis added), meaning we do not require a written motion formally filed with the court. See id. (citing United States v. Arbelaez, 7 F.3d 344, 347-48 (3d Cir. 1993), with approval for "construing a letter from defense counsel sent to a judge's chambers requesting a continuance as 'a[] pretrial motion' because it contained a request for relief that required court intervention and was treated by the

---

[6]The petition for writ of certiorari was filed raising other grounds. See Petition for Writ of Certiorari at i, Loughrin, 134 S. Ct. 822 (No. 13-316).

parties as a motion"); see also United States v. Moses, 15 F.3d 774, 776 n.3 (8th Cir. 1994) (noting "[o]ral motions . . . trigger a period of excludable delay" under § 3161(h)(1)(D)). "[A]lthough the record does not indicate whether the motion was oral or written," "we are satisfied" by the record before us that Tyler "did in fact move for" a change of plea hearing as of July 20, 2012. Moses, 15 F.3d at 776 n.3. Because a "motion" was "filed" within the meaning of subparagraph (D)'s governing exclusion, Allen's STA clock does not include the pretrial motion-related delay from July 20, 2012, "through the conclusion of the" July 26, 2012, change of plea hearing.[7] 18 U.S.C. § 3161(h)(1)(D).

Having found these seven days excluded, we agree with the magistrate judge that "[e]ven if . . . the time from July 4 through July 16 is not excluded . . . , only 66 days" accrued by the time Allen filed his motion to dismiss. Allen does not challenge the finding below that his STA clock excluded the period from the October 25, 2012, motion to dismiss through the district court's January 17, 2013, denial of the motion, so we accept, without ruling upon, that finding. See 18 U.S.C. § 3161(h)(1)(D). With Allen's STA clock resuming on January 18, 2013, the seventieth non-excluded day was January 21, 2013, a legal holiday. Because trial began the next day, the STA's seventy-day requirement was satisfied. See Fed. R. Crim. P. 45(a)(1)(C) (explaining that if the last day of a period "is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday"); United States v. Vickerage, 921 F.2d 143, 147 (8th Cir. 1990) (applying Rule 45(a)(1)(C) where STA clock's seventy-day period ended on a Sunday and trial began the next working day).

---

[7]July 20, 2012, is excluded because "'both the date on which the motion was filed and the date on which the motion was decided' are excluded under subparagraph (D)." Bloate II, 655 F.3d at 753 n.3 (quoting Moses, 15 F.3d at 777).

## 2.     Sixth Amendment Right to Speedy Trial

The Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." U.S. Const. amend. VI. "Sixth Amendment challenges are reviewed separately from the Speedy Trial Act. But this court has stated, 'It would be unusual to find the Sixth Amendment has been violated when the Speedy Trial Act has not.'" United States v. Aldaco, 477 F.3d 1008, 1018-19 (8th Cir. 2007) (internal citation omitted) (quoting United States v. Titlbach, 339 F.3d 692, 699 (8th Cir. 2003)). "To trigger speedy trial analysis, the defendant must allege the interval between accusation and trial has crossed a line 'dividing ordinary from presumptively prejudicial delay.'" Id. at 1019 (quoting Doggett v. United States, 505 U.S. 647, 652 (1992)). Here, we assume the nearly seventeen-month delay between Allen's original indictment and trial was presumptively prejudicial. See United States v. Jeanetta, 533 F.3d 651, 656 (8th Cir. 2008) ("A delay approaching one year may meet the threshold for presumptively prejudicial delay."). As such, we determine whether Allen's Sixth Amendment rights were violated by considering the four Barker v. Wingo, 407 U.S. 514, 530 (1972), factors: "1) the length of delay; 2) the reason for delay; 3) whether the defendant asserted the right to a speedy trial; and 4) whether the defendant suffered any prejudice." Jeanetta, 533 F.3d at 656.

First, we acknowledge seventeen months is a lengthy delay. But our court, under the Sixth Amendment, has permitted even longer delays. See, e.g., United States v. Jenkins-Watts, 574 F.3d 950, 966-67 (8th Cir. 2009) (deciding over eighteen months between indictment and trial was "justifiable"); see also, e.g., United States v. Summage, 575 F.3d 864, 870, 876 (8th Cir. 2009) (over thirty-two months); Aldaco, 477 F.3d at 1018-20 (forty months).

Second, "'we consider the reasons for the delay and evaluate whether the government or the criminal defendant is more to blame.'" Summage, 575 F.3d at 876 (quoting United States v. Erenas-Luna, 560 F.3d 772, 777 (8th Cir. 2009)). By changing his plea, canceling his change of plea, and moving for various continuances,

Allen delayed trial for twenty weeks. Approaching a trial date, Allen's motion to dismiss delayed trial another eleven weeks. While the government's first and second superseding indictments delayed the trial date seven weeks and three weeks, respectively, Allen exacerbated the delay stemming from the first superseding indictment by requesting a continuance of over eight additional weeks. Although the government bears some responsibility, the blame for a majority of the pretrial delay is borne by Allen.

Third, Allen asserted his right to a speedy trial through his October 25, 2012, motion to dismiss. Nothing in the record indicates Allen acted to protect his speedy trial rights earlier. Allen's substantial contributions to the pretrial delay belie his later attempts to assert his speedy trial rights.

Fourth, "[a] showing of prejudice is required to establish a violation of the Sixth Amendment Speedy Trial Clause, and that necessary ingredient is entirely missing here." Reed v. Farley, 512 U.S. 339, 353 (1994). Allen claims prejudice because "one of his key rebuttal witnesses—Tracy Core[—]died during the late stages of this case." In the district court, Allen argued he would have used Core's testimony to impeach one witness—Melvin Jackson. Under the facts of this case, we do not believe the absence of such testimony sufficiently prejudiced Allen's defense. Cf. Barker, 407 U.S. at 534 (declaring the "prejudice was minimal" because the only missing witness testimony was "in no way significant to the outcome"). Jackson never testified at trial, leaving Core nothing to impeach.

Unable to show the prejudice of pretrial delay, and having caused much of the delay himself, Allen failed to establish a Sixth Amendment violation.

## B. Mallett's Batson Challenge

Mallett argues the government used one of its peremptory challenges to strike Juror 19, a young African-American woman, solely on the basis of race.

> If a party makes a prima facie showing that a peremptory challenge is race based, the proponent must show a race neutral justification to overcome the objection. The district court then decides whether the objecting party has shown purposeful discrimination. Since those factual findings turn largely on credibility evaluations, they are due great deference, and our review is for clear error.

United States v. Ellison, 616 F.3d 829, 832 (8th Cir. 2010) (internal citations omitted). Here, the prosecutor explained the decision to strike Juror 19 was based on several factors, including she was young and single with a nose ring, she appeared inattentive and was suspected of sleeping, and she seemed to be less established in the community than other jurors. The district court did not clearly err in crediting these race-neutral justifications. See United States v. Maxwell, 473 F.3d 868, 872 (8th Cir. 2007) (deciding a juror's "absence of community attachment" and "demeanor and body language may serve as legitimate, race-neutral reasons to strike a potential juror"); United States v. Thompson, 450 F.3d 840, 844 (8th Cir. 2006) (concluding the "government's explanation that [the juror] was young, lacked life experience, did not have children, and was not married or employed is facially valid and was sufficient to meet its burden"); United States v. Thirdkill, 116 F.3d 481, 1997 WL 299408, at *1 (8th Cir. June 6, 1997) (unpublished table decision) (upholding a challenge where the prosecutor claimed a juror was "sleeping or nodding off during voir dire").

## C. Sufficiency of the Evidence

On appeal, Allen and Mallett challenge the sufficiency of the evidence supporting their respective conspiracy convictions.[8] "'We review the sufficiency of

---

[8]Though Mallett challenges the district court's denial of his motion for judgment of acquittal, "[w]e apply the same standard of review" to this ruling as "to a sufficiency of the evidence challenge." United States v. Cook, 603 F.3d 434, 437 (8th Cir. 2010).

the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict.'" United States v. Casteel, 717 F.3d 635, 644 (8th Cir. 2013) (quoting United States v. Teague, 646 F.3d 1119, 1121-22 (8th Cir. 2011)). "We reverse 'only if no reasonable jury could have found guilt beyond a reasonable doubt.'" Id. (quoting United States v. Herbst, 666 F.3d 504, 510 (8th Cir. 2012)).

"The elements of a conspiracy to distribute a controlled substance under 21 U.S.C. § 846 are '(1) that there was a conspiracy, i.e., an agreement to distribute the drugs; (2) that the defendant knew of the conspiracy; and (3) that the defendant intentionally joined the conspiracy.'" United States v. Keys, 721 F.3d 512, 519 (8th Cir. 2013) (quoting United States v. Jiminez, 487 F.3d 1140, 1146 (8th Cir. 2007)). "A defendant's knowledge is generally established through circumstantial evidence, and no direct evidence of an explicit agreement need be introduced to prove a conspiracy, since a tacit understanding may be inferred from circumstantial evidence." United States v. Benitez, 531 F.3d 711, 716 (8th Cir. 2008) (internal citations omitted). "Further, 'it is not necessary to proof of a conspiracy that it have a discrete, identifiable organizational structure.'" United States v. Slagg, 651 F.3d 832, 840 (8th Cir. 2011) (quoting United States v. Banks, 10 F.3d 1044, 1054 (4th Cir. 1993)). The evidence adduced at trial reasonably suffices to support both Allen's and Mallett's convictions.

At trial, multiple witnesses testified Allen, Mallett, and Tyler often distributed crack cocaine together from joint distribution locations.[9] When distributing together, Allen, Mallett, and Tyler took calls from customers on a communal cell phone and shared a scale used for measuring crack cocaine. The three took turns selling to

---

[9]This was often done by using a customer's house or apartment (usually in exchange for drugs) as a temporary crack cocaine distribution center.

customers and sometimes split individual sales such that a customer would have to purchase partly from one seller and partly from another. Allen, Mallett, and Tyler also made deliveries. Customers called Allen, Mallett, or Tyler to arrange a crack cocaine purchase at a specific location, and one or more of the three sellers would arrive and sell the requested amount. Often, a customer would speak to one seller in arranging the transaction, but another of the three would deliver the drugs.

A reasonable jury could infer a tacit agreement existed between Allen, Mallett, and Tyler to sell crack cocaine, that each was fully aware of the agreement proven, and each had intentionally joined the agreement. "[T]he interdependence of the enterprise's participants provides ample support for a reasonable jury's conclusion that they were working together to pursue 'a shared objective to sell large quantities of drugs.'" Slagg, 651 F.3d at 840 (quoting United States v. Roach, 164 F.3d 403, 412 (8th Cir. 1998)).

Ignoring the undercover officers' testimony, Allen argues "[t]he mere testimony of drug users and convicted drug dealers alone is not enough to sustain the conviction in his case" and that many of the witnesses suffered from "credibility issues." Mallett similarly emphasizes credibility issues. "However, we do not consider attacks on witnesses' credibility when we are evaluating an appeal based upon the sufficiency of evidence." United States v. Funchess, 422 F.3d 698, 701 (8th Cir. 2005). And "'[w]e have repeatedly upheld jury verdicts based solely on the testimony of co-conspirators and cooperating witnesses, noting that it is within the province of the jury to make credibility assessments and resolve conflicting testimony.'" United States v. Jefferson, 725 F.3d 829, 834 (8th Cir. 2013) (quoting United States v. Coleman, 525 F.3d 665, 666 (8th Cir. 2008)).

Allen also argues "[t]he evidence as to drug quantity was so vague and uncertain that no reasonable jury could have relied upon it to conclude that a conspiracy involving 280 grams or more of crack cocaine had been proven beyond

a reasonable doubt." But Tyler testified to having sold "[a]t least" twenty ounces—about 567 grams—of crack cocaine between January and February of 2011. One witness saw Allen, Mallett, and Tyler together with $2,500 worth of crack cocaine between them. Another witness saw each of these three possessing approximately fourteen grams of crack cocaine on multiple occasions: Allen more than ten times, Mallett about ten times, and Tyler about five times. "Because a defendant in a conspiracy may be 'held responsible for all reasonably foreseeable drug quantities that were in the scope of the criminal activity that he jointly undertook,' we conclude" the government presented sufficient evidence for a reasonable jury to determine the conspiracy involved at least 280 grams of crack cocaine. United States v. Littrell, 439 F.3d 875, 881 (8th Cir. 2006) (quoting United States v. Jimenez-Villasenor, 270 F.3d 554, 561 (8th Cir. 2001)).

### D. Mallett's Severance Arguments

Before trial, Mallett moved for severance. The magistrate judge denied the motion, concluding Mallett failed to prove he would be sufficiently prejudiced by a joint trial. Having neither objected to the order before the district court nor renewed the motion during trial, Mallett now argues "[t]he defendants should have had separate trials and Mallett's motion to sever should have been granted."[10] The parties dispute the extent to which Mallett has preserved these arguments.

---

[10]Mallett's brief on appeal twice uses the term "misjoinder" in the context of arguing Mallett was prejudiced, under Federal Rule of Criminal Procedure 14(a), by his joint trial with Allen. Mallett nowhere argues the impropriety of the Rule 8(b) joinder of defendants under the second superseding indictment. Mallett apparently conceded proper joinder before the magistrate judge and argued only for separate *trials* in light of the prejudice expected from a joint trial. We read Mallett's passing use of the term "misjoinder" not as a separate claim of error but simply as a misuse of terminology in making his severance arguments.

Even were we to agree with Mallett that he sufficiently preserved his severance claim, our review would be for abuse of discretion. See United States v. Elder, 682 F.3d 1065, 1074 (8th Cir. 2012). We would reverse only if Mallett satisfied the "heavy burden," id., of proving his joint trial "'resulted in severe or compelling prejudice,'" United States v. Mann, 685 F.3d 714, 718 (8th Cir. 2012) (quoting United States v. Rimell, 21 F.3d 281, 289 (8th Cir. 1994)). See United States v. Washburn, 728 F.3d 775, 783 (8th Cir. 2013). Mallett has failed to do so here.

Mallett claims he was prejudiced by (1) the fact that a greater weight of the evidence presented at trial inculpated only Allen in the conspiracy, and (2) trial evidence that Allen, but not Mallett, was involved in witness tampering. "'The preference for joint trials of defendants jointly indicted, particularly where conspiracy is charged, is not limited by any requirement that the quantum of evidence of each defendant's culpability be equal.'" United States v. Lewis, 557 F.3d 601, 610 (8th Cir. 2009) (quoting United States v. Jackson, 549 F.2d 517, 525 (8th Cir. 1977)). "'Severance is not required merely because evidence that is admissible only against some defendants may be damaging to others.'" Mann, 685 F.3d at 718 (quoting United States v. Mickelson, 378 F.3d 810, 818 (8th Cir. 2004)).

In this case, the evidence was relatively straightforward and strongly linked both Allen and Mallett in an active drug conspiracy, see, e.g., Lewis, 557 F.3d at 610, while the jury instructions clearly separated the questions of each defendant's guilt, see Mann, 685 F.3d at 718 ("'The risk of prejudice posed by joint trials is best cured by careful and thorough jury instructions.'" (quoting Mickelson, 378 F.3d at 818)). The instructions correctly and clearly stated "you must give separate consideration to the evidence about each individual defendant" and "[e]ach defendant is entitled to be treated separately."

We have long preferred defendants be tried together when charged together for a conspiracy "'based upon the same evidence and acts,'" and we see no reason the

jury could not compartmentalize the evidence against each defendant in this case as instructed. United States v. Frank, 354 F.3d 910, 920 (8th Cir. 2004) (quoting United States v. Boyd, 610 F.2d 521, 525 (8th Cir. 1979)). Mallett has failed to demonstrate the necessary "'severe or compelling prejudice'" stemming from his joint trial with Allen sufficient to receive any relief on appeal. Mann, 685 F.3d at 718 (quoting Rimell, 21 F.3d at 289).

## III.  CONCLUSION

For the foregoing reasons, we affirm.

_____