# United States Court of Appeals

## For the Eighth Circuit

_____

No. 19-2820

_____

United States of America

*Plaintiff - Appellee*

v.

Christopher Frommelt

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Dubuque

_____

Submitted: June 19, 2020
Filed: August 21, 2020

_____

Before LOKEN and GRASZ, Circuit Judges, and CLARK,[1] District Judge.

_____

GRASZ, Circuit Judge.

A jury found Christopher Frommelt guilty of four crimes: (1) sexual exploitation of a child, 18 U.S.C. § 2251(a); (2) conspiracy to distribute

---

[1]The Honorable Stephen R. Clark, Sr., United States District Judge for the Eastern District of Missouri, sitting by designation.

methamphetamine, 21 U.S.C. §§ 841 and 846; (3) distribution of methamphetamine near a protected location, 21 U.S.C. §§ 841, 860(a);[2] and (4) distribution of methamphetamine on premises where a person under eighteen was present, 21 U.S.C. § 860a. Now, Frommelt appeals the district court's[3] denial of his motion for a judgment of acquittal, arguing the government presented insufficient evidence to sustain his convictions. He also claims ineffective assistance of trial counsel. We affirm the denial of Frommelt's motion for a judgment of acquittal but decline to consider his ineffective-assistance claim.

## I. Background

We recite the facts in a light most favorable to the jury's verdict. *See United States v. Sainz Navarrete*, 955 F.3d 713, 718 (8th Cir. 2020). On January 17, 2018, a sixteen-year-old girl ("A.E.") went to Frommelt's house with her brother, Douglas Clark, and his girlfriend, Elizabeth Davey, to use drugs. Once there, they all used methamphetamine provided by Frommelt.[4] Frommelt was a forty-one-year old photographer, and he started taking pictures of A.E. with his camera equipment. A.E. liked having her picture taken.

---

[2]The jury also found Frommelt guilty of distributing methamphetamine to a person under the age of twenty one in violation of 21 U.S.C. § 859. But because § 859 defers to § 860, we only mention the latter here. *See* 21 U.S.C. § 859 ("*Except as provided in section 860 of this title*," any person at least eighteen years of age who violates § 841(a)(1) by distributing a controlled substance to a person under twenty one is subject to criminal penalty.) (emphasis added).

[3]The Honorable C.J. Williams, United States District Judge for the Northern District of Iowa.

[4]Frommelt and the government stipulated that Frommelt's house was within 1,000 feet of a secondary school and university, both protected locations. *See* 21 U.S.C. § 860(a).

After a while, Clark and Davey left, but A.E. stayed because she wanted to use more methamphetamine. Alone with A.E., Frommelt sat next to her on the couch "and started rubbing [her] leg and kissing [her] on the neck." Frommelt then asked A.E. if she wanted to have sex, and she accompanied Frommelt to his bedroom where they had a sexual encounter. Still high, A.E. saw Frommelt holding his phone while they were having intercourse. She also remembers him holding his camera. A.E. stayed the night in Frommelt's bedroom, and, once or twice during the night, he provided her a line of methamphetamine. The next day, A.E.'s sister's boyfriend picked her up from Frommelt's house and took her home.

After the night at Frommelt's house, Frommelt and A.E. continued to talk using Facebook Messenger. And Frommelt eventually sent A.E. a video of them engaged in sexual intercourse in his room. After she received Frommelt's message, A.E. watched the video. When Frommelt then asked A.E. to come over again, she said she "might . . ., but we [need to] forget the other night. I was basically taken advantage of." Frommelt apologized, saying he did not realize she was "strung out."

On January 21, Clark was arrested for violating his probation. Clark thought he could get drug treatment — maybe in lieu of a prison sentence — if he provided useful information about drug activity. So he asked to talk with local law enforcement's drug task force. The next day, Chad Leitzen, an officer with the City of Dubuque, Iowa's drug task force, interviewed Clark. And during the interview, Clark provided Leitzen with information about three individuals: Frommelt, K.H., and S.W. Based on this information, Leitzen obtained a GPS mobile tracking device search warrant for a gray 2018 Chevy Malibu that Frommelt had rented from Hertz on January 10.

On January 29, after tracking the Malibu for about a week, Leitzen obtained a warrant to search the Malibu, and, with other officers, he stopped the car in Dubuque County, Iowa. K.H. was driving and S.W. was one of the passengers. The

officers discovered 961 grams of actual methamphetamine in the Malibu, which had been driven 9,263 miles since Frommelt rented it on January 10. During the stop, Leitzen interviewed both K.H. and S.W., and he photographed the WhatsApp messages on S.W.'s phone. Both K.H. and S.W. used that phone to communicate with Frommelt. And in the WhatsApp messages, the three talked about making their next rental a Cadillac and how Frommelt was a better salesman than "copilot."

K.H. testified Frommelt had previously agreed to let K.H. use the rented Malibu to transport methamphetamine from Texas to Iowa in exchange for methamphetamine. K.H. used the car to make three trips. On the first trip, he and another person picked up methamphetamine in Texas and brought it back to S.W.'s home in Dubuque, Iowa, where "it was broken up for resale." Some of that methamphetamine went to Frommelt. For the second trip, K.H. gave the Malibu to someone else to pick up the methamphetamine, but on the way back that person threw the methamphetamine out the window near the Iowa-Missouri border. Before the third trip, K.H. and S.W. discussed the trip with Frommelt at his house. Frommelt volunteered to go with K.H., but K.H. said it would "look[] better" if S.W. — a female — went with him. So S.W. went. It was on their return trip, however, that officers stopped the Malibu and found the 961 grams of actual methamphetamine.

During his investigation, Leitzen acquired Frommelt's Walmart money transfer history. And just days before the January 29 stop and search of the Malibu, Frommelt made two money transfers from a Dubuque, Iowa, Walmart to two different Dallas, Texas, Walmarts. These two money transfers added up to $2,500. On January 26, Frommelt transferred $1,000 to S.W. And on January 27, he transferred $1,500 to Veronica Hinkle, "the girlfriend of the source for the methamphetamine in Texas." He also made an earlier transfer on January 24, sending $120 to Anthony Dewayne Crosby, the front-seat passenger in the Malibu when it was stopped and searched on January 29. These money transfers were made during the third trip to Texas, and

K.H. testified Frommelt expected a larger share of the methamphetamine from this trip for sending $2,500 in addition to lending the Malibu.

In a five-count indictment, Frommelt was charged with sexual exploitation of a child in violation of 18 U.S.C. § 2251(a), distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2), conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841 and 846, distribution of methamphetamine to a person under twenty one and near a protected location in violation of 21 U.S.C. §§ 841, 859, and 860(a), and distribution of methamphetamine on premises where a person under eighteen was present in violation of 21 U.S.C. § 860a. Following a trial, the jury found Frommelt guilty of all but the charge of distributing child pornography. The district court then denied Frommelt's Rule 29 motion for a judgment of acquittal and his Rule 33 motion for a new trial and sentenced him to 264 months of imprisonment.

Frommelt appealed, arguing he is entitled to a Rule 29 judgment of acquittal because the trial evidence was insufficient to support his convictions.[5] He also challenges his convictions on the grounds that he received ineffective assistance of counsel at trial in violation of his Sixth Amendment rights. Having jurisdiction under 28 U.S.C. § 1291, we address these contentions in order.

_____

[5]In a heading, Frommelt's brief also states the district court erroneously denied him a new trial on his three drug charges because the government did not sufficiently prove the elements of those crimes. *See United States v. Stacks*, 821 F.3d 1038, 1044 (8th Cir. 2016) (Rule 33(a) of the Federal Rules of Criminal Procedure grants district courts discretion to order "a new trial on the ground that the verdict is contrary to the weight of the evidence.") (internal quotation omitted). But his brief never develops an argument for a new trial under Rule 33 based on the evidence. It does not even cite Rule 33, let alone its standard of review. And in fact, at the outset, Frommelt's summary of his argument challenges only the district court's denial of his Rule 29 motion for a judgment of acquittal without ever mentioning the district court's denial of his Rule 33 motion for a new trial. We will not address such an undeveloped argument for a new trial under Rule 33. *See* Fed. R. App. P. 28(a)(8).

## II. Analysis

### A. Judgment of Acquittal

Frommelt argues the district court erred in denying his motion for judgment of acquittal because the trial evidence was insufficient to support any of his four convictions. *See* Fed. R. Crim. P. 29(a) (requiring entry of "a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction"). We disagree. The evidence, viewed in favor of the jury's verdict, was sufficient to support each of Frommelt's convictions.

We review denials of motions for judgment of acquittal de novo. *Sainz Navarrete*, 955 F.3d at 718. And we will affirm a jury's guilty verdict "if, taking all facts in the light most favorable to the verdict, a reasonable juror could have found the defendant guilty of the charged conduct beyond a reasonable doubt." *Id.*

### 1. Sexual Exploitation of a Child

For the jury to convict Frommelt of sexual exploitation of a child under 18 U.S.C. § 2251(a), the government had to prove Frommelt "employ[ed], use[d], persuade[d], induce[d], entice[d], or coerce[d]" A.E. to engage in "sexually explicit conduct for the purpose of producing any visual depiction of such conduct." 18 U.S.C. § 2251(a). Frommelt argues the government failed to meet its burden of proof in several respects. We are not persuaded.

First, Frommelt argues the government did not prove A.E. engaged in any sexually explicit conduct. Sexually explicit conduct, for purposes of § 2251(a), includes sexual intercourse. The government's theory was that the trial evidence showed Frommelt recorded himself engaged in sexual intercourse with A.E., and then sent that video to her using Facebook Messenger. 18 U.S.C. § 2256(2)(A)(i)

(defining "sexually explicit conduct"). But the government was unable to produce that video at trial. It was only able to produce the Facebook message Frommelt sent to A.E., which included a thumbnail of the video with a play button superimposed on the image. This play button, Frommelt says, made it impossible to determine whether A.E. was engaged in sexual intercourse or any other sexually explicit conduct. And he claims the government presented no other evidence to support its theory. This argument neglects A.E.'s trial testimony.

A.E. testified that after Frommelt gave her methamphetamine at his house, they had sex on the bed in his room, during which Frommelt was holding his phone. Then, when shown Frommelt's Facebook message containing the thumbnail image, A.E. testified she clicked the play button after receiving the message. The video showed her and Frommelt engaged in sexual intercourse. Viewing this testimony and the thumbnail image in favor of the jury's verdict, a reasonable juror could conclude A.E. engaged in sexually explicit conduct. So there was enough trial evidence to prove this element of the crime. *See Sainz Navarrete*, 955 F.3d at 718.

Summarily, Frommelt also argues the government failed to prove the "purpose" element of the crime because the sexually explicit conduct was consensual, as if that somehow negates Frommelt's illicit purpose. It does not. The government had to prove that "one of [Frommelt's] dominant purposes was to produce [the] sexually explicit [video]." *United States v. Raplinger*, 555 F.3d 687, 693 (8th Cir. 2009); *see also United States v. Fortier*, 956 F.3d 563, 567 (8th Cir. 2020). And the trial evidence showed Frommelt took pictures of A.E. before he asked her to have sex, video recorded them having sex, and then sent A.E. the video. Consensual or not, a reasonable juror could conclude that one of Frommelt's dominant purposes for using A.E. to engage in sexually explicit conduct was to produce the video. So the trial evidence was not lacking in this regard either.

Citing no authority, Frommelt next argues the government had to prove he intended to "distribute," a visual depiction of A.E. engaged in sexually explicit conduct, presumably to a third person. But § 2251(a) does not require this. Rather, the government can prove a violation of § 2251(a) by showing the illicit visual depiction "has actually been transported or transmitted using any means or facility of interstate or foreign commerce." *See* 18 U.S.C. § 2251(a). And Frommelt makes no argument that sending the explicit video through Facebook Messenger failed to satisfy this element of the crime. His "distribution" argument is therefore misplaced.

Finally, Frommelt argues the government had to prove he somehow *persuaded*, *induced*, or *enticed* A.E. to engage in sexually explicit conduct. Because A.E. liked having her picture taken earlier in the night, Frommelt claims he did not persuade, induce, or entice her to participate in the making of the sexually explicit video. Arguably, he did by first giving her drugs. But in any case, persuasion, inducement, and enticement, although sufficient, are not necessary to the commission of the crime. *See Fortier*, 956 F.3d at 567 ("The statute contains a number of verbs that describe the actus reus of the offense, ranging from 'employs' and 'uses' to 'persuades,' 'induces,' 'entices,' and 'coerces.'") (quoting 18 U.S.C. § 2251(a)). The government's theory was that Frommelt *used* A.E. to engage in sexually explicit conduct for the purpose of producing a visual depiction. *See id.* And as explained above, we conclude the government presented sufficient evidence to prove this theory of guilt. Frommelt is therefore not entitled to judgment of acquittal on his conviction for sexual exploitation of a child.

## 2. Conspiracy to Distribute Methamphetamine

As to his conspiracy conviction, Frommelt argues there was no evidence a conspiracy existed. Alternatively, he argues that even if there was sufficient evidence of a conspiracy, the government failed to prove he knew about it or intentionally joined. We disagree on both counts.

"To establish that a defendant conspired to distribute drugs under 21 U.S.C. § 846, the government must prove: (1) that there was a conspiracy, i.e., an agreement to distribute the drugs; (2) that the defendant knew of the conspiracy; and (3) that the defendant intentionally joined the conspiracy." *United States v. Sanchez*, 789 F.3d 827, 834 (8th Cir. 2015) (quoting *United States v. Slagg*, 651 F.3d 832, 840 (8th Cir. 2011)). Generally, a defendant's knowledge is "established through circumstantial evidence, and no direct evidence of an explicit agreement need be introduced to prove a conspiracy, since a tacit understanding may be inferred from circumstantial evidence." *United States v. Mallett*, 751 F.3d 907, 915 (8th Cir. 2014) (quoting *United States v. Benitez*, 531 F.3d 711, 716 (8th Cir. 2008)).

K.H. made regular trips to Texas to retrieve distribution quantities of methamphetamine. *See United States v. Bradshaw*, 955 F.3d 699, 706 (8th Cir. 2020) (explaining an intent to distribute may be inferred from circumstantial evidence like a large quantity of a controlled substance). And Frommelt not only knew about these trips, he supplied the means of transportation in exchange for a cut of the drugs. After K.H.'s first trip to Texas, he brought the methamphetamine back to S.W.'s home in Dubuque, Iowa, where "it was broken up for resale," and an amount went to Frommelt. *See United States v. Wilder*, 597 F.3d 936, 943 (8th Cir. 2010) (citing as evidence of a conspiracy to distribute drugs the fact that individuals associated with the defendant "sat around and broke up their drugs"). On K.H.'s next trip, officers discovered over 960 grams of actual methamphetamine in Frommelt's rented Malibu, as well as S.W.'s WhatsApp messages to Frommelt discussing plans to obtain more drugs. And in addition to lending K.H. the Malibu for this trip, Frommelt wired $2,500 to Texas for an even larger share of the drugs. On top of all this, Frommelt had previously provided methamphetamine to A.E., Clark, and Davey.

Presented with this evidence, a reasonable juror could conclude not only that there was a conspiracy to distribute methamphetamine, but that Frommelt knew about the conspiracy and intentionally joined. And we must reject Frommelt's arguments

that most of this evidence amounts to unreliable testimony from cooperating witnesses motivated by the prospect of leniency from the government or by a dislike of him. We do not weigh the credibility of testimony when reviewing a request for judgment of acquittal and "have repeatedly upheld jury verdicts based solely on the testimony of co-conspirators and cooperating witnesses" because "it is within the province of the jury to make credibility assessments." *Mallett*, 751 F.3d at 916 (quoting *United States v. Jefferson*, 725 F.3d 829, 834 (8th Cir. 2013)). Judgment of acquittal was therefore not appropriate on Frommelt's conviction for conspiracy to distribute methamphetamine. *See Sainz Navarrete*, 955 F.3d at 718.

### 3. Distribution of Methamphetamine

Finally, Frommelt argues his two convictions for distributing methamphetamine cannot stand. Frommelt claims that because methamphetamine was already out on a bar table when A.E., Clark, and Davey arrived at his house, the evidence is insufficient to prove he was the one who supplied the drug. Again, we do not agree.

Although Davey testified that when she, Clark, and A.E. arrived at Frommelt's house methamphetamine was "[j]ust laying out on the bar table," Frommelt's argument neglects Clark's and A.E.'s testimony that Frommelt gave them methamphetamine that night. A.E. testified Frommelt left her a line of methamphetamine when she was staying the night in his bedroom. Even absent this testimony though, the reasonable inference is that Frommelt provided the methamphetamine. It was his house, and there was no evidence anyone else brought drugs that night. So there was enough evidence to prove Frommelt distributed methamphetamine, and he was therefore not entitled to judgment of acquittal on either of his distribution convictions.

## B. Ineffective Assistance of Counsel

Frommelt claims his convictions violate the Sixth Amendment because trial counsel rendered ineffective assistance. *See Strickland v. Washington*, 466 U.S. 668, 685–86 (1984). Normally, ineffective-assistance claims are asserted in a 28 U.S.C. § 2255 proceeding. *United States v. Oliver*, 950 F.3d 556, 566 (8th Cir. 2020). "We review ineffective-assistance claims on direct appeal only 'where the record has been fully developed, where not to act would amount to a plain miscarriage of justice, or where counsel's error is readily apparent.'" *Id.* (quoting *United States v. Thompson*, 690 F.3d 977, 992 (8th Cir. 2012)).

Frommelt has made no attempt to show that his ineffective-assistance claim is ripe for review. We have no developed record on this claim, and "declining to consider this claim on direct appeal would not constitute a plain miscarriage of justice because [Frommelt] 'remains free to pursue [his] ineffective assistance claim through a section 2255 action.'" *Id.* (second alteration in original) (quoting *United States v. Sanchez-Gonzalez*, 643 F.3d 626, 629 (8th Cir. 2011)). Nor is there a readily apparent, prejudicial error. We will therefore decline to consider Frommelt's ineffective-assistance claim on direct appeal.

## III. Conclusion

We affirm the district court's judgment.

_____